OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, George Schewirey, appeals the decision of the Mahoning County Court of Common Pleas that found him guilty of five counts of rape, four of which would allow the trial court to imprison Schewirey for life, and sentenced him accordingly.
 {¶ 2} We reverse Schewirey's conviction because the State's expert witness gave an opinion on the veracity of a child who was the alleged victim of sexual abuse. In this case, the expert did not give a direct opinion on the child's veracity. However, the expert did opine that the child was the victim of sexual abuse and the only foundation for this opinion was the child's statements to the expert. Thus, the expert's opinion was an opinion on the veracity of the child which is inappropriate and highly prejudicial. The trial court's decision is reversed and this case is remanded for further proceedings.
 Facts {¶ 3} Schewirey and Raelene Latimer began living together in 1996 and were married in 2001. Raelene had four children when she met Schewirey: Dawna, Phillip, Meagan, and Paul. The children were not living with Raelene when she and Schewirey first began living together, but the children began living with Schewirey and Raelene in 2000.
 {¶ 4} According to Meagan, Schewirey began sexually assaulting her when she was twelve years-old. She stated that he made her ejaculate him by moving her hands on his penis, that he forced her to perform oral sex on him, that he performed oral sex on her, and that he also forced her to submit to anal sex. She stated that this conduct continued until she was fourteen, shortly before Schewirey was arrested. Paul also testified that when he was ten or eleven years old, Schewirey forced him to perform oral sex and to submit to anal sex. Dawna also made allegations of sexual abuse.
 {¶ 5} On August 28, 2004, Youngstown police officers arrived at the family's home in response to a reported fight. Schewirey was not present and those who were present reported the alleged sexual abuse. Soon thereafter, Meagan was seen by Dr. Stephanie Dewar, who found no physical signs of abuse.
 {¶ 6} Schewirey was indicted on December 16, 2004, for nine counts of rape, five against Meagan, three against Paul, and one against Dawna. Five of those counts alleged that the victim was less than thirteen years of age, which would allow Schewirey to be punished by a life sentence.
 {¶ 7} The matter proceeded to a jury trial. At the close of the State's presentation of the evidence, the trial court granted Schewirey's Crim.R. 29(A) motion for acquittal on count eight of the indictment. The jury then acquitted Schewirey of counts four, five, and nine. Four of the counts of which Schewirey was convicted contained mandatory life sentences. The fifth was a first degree felony. The trial court sentenced Schewirey to the maximum sentence for the first degree felony and ordered that this sentence and each of his four life sentences be served consecutively.
 Hearsay {¶ 8} In the first of five assignments of error, Schewirey argues:
 {¶ 9} "The trial court erred by permitting the State to introduce statements that were either hearsay in violation of Evidence Rule 802 and the Sixth Amendment right to confrontation or irrelevant under Evidence Rule 402."
 {¶ 10} Schewirey contends that the trial court abused its discretion by allowing both police officers and a doctor to testify regarding the content of out-of-court statements that Meagan, Paul and their mother made to them. He contends that the admission of these statements violated both the Confrontation Clause and Evid.R. 802's general prohibition against the introduction of hearsay.
 {¶ 11} The admission or exclusion of relevant evidence lies within the sound discretion of the trial court and this court cannot reverse its decision absent an abuse of discretion. State v. Robb, 88 Ohio St.3d 59,68, 2000-Ohio-0275. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157. Moreover, this court must disregard any error which does not affect the defendant's substantial rights since any such error is harmless. Crim.R. 52(A). A criminal defendant only has the right to a trial free from prejudicial error, not necessarily one free of all error. State v. Brown, 65 Ohio St.3d 483, 485, 1992-Ohio-0061. A constitutional error can only be disregarded if it is harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 24.
 {¶ 12} Schewirey argues that both statements made to police officers and statements made to a doctor should have been excluded. These two categories of statements must be analyzed using different sets of law, so they will be addressed separately.
 Statements to Police {¶ 13} On August 28, 2004, Officer Kelly Lamb responded to the home of Schewirey and the Latimers because of a report about a fight at the home. When she arrived there, she saw Meagan, Paul, and their mother, who reported that they had gotten into a fight with Schewirey who then fled the scene. At the scene, the children's mother told Officer Lamb that Meagan told her that Schewirey was performing sexual acts on her. Meagan then told the officer that Schewirey forced Meagan to perform a sexual act on him both two years and two weeks ago. Paul then told Officer Lamb that he had seen Meagan and George together with a blanket over Meagan's head and George standing next to her. Dawna Williams, a sister of Meagan and Paul, also told Officer Lamb that Schewirey had sexually abused her in the past.
 {¶ 14} Schewirey stated contemporaneous objections to all of this testimony, but did not specifically state a basis for his objections. In response to Schewirey's first objection, the trial court stated that it was "allowing this testimony not to prove the truth of what anyone said to this officer * * * but I will allow this officer to testify what was told to her to explain why she did what she did. So for that limited purpose only, I'll allow it." In response to a later objection, the trial court responded, "I'm going to allow the answer with that understanding. Meagan already testified about certain acts that did occur. What we are trying to get to is why this officer did what she did and explain her role, so you can answer the question."
 {¶ 15} Schewirey challenges the admission of the statements made to Officer Lamb under both the Rules of Evidence and the Confrontation Clause. However, Schewirey's arguments concerning whether the admission of the out-of-court statements of Meagan, Paul, and Dawna violated the Confrontation Clause are meritless. The admission of a declarant's out-of-court statements does not violate the Confrontation Clause "as long as the declarant is testifying as a witness and subject to full and effective cross-examination." California v. Green (1970), 399 U.S. 149,158; see also Crawford at 59, footnote 9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). As addressed above, Meagan was subject to a full cross-examination which effectively allowed Schewirey to challenge her credibility. Paul and Dawna also testified and were fully cross-examined. Accordingly, the admission of these statements did not violate the Confrontation Clause.
 {¶ 16} Furthermore, Schewirey waived all but plain error regarding whether the admission of the statements the children's mother made violated the Confrontation Clause. Evid.R. 103(A)(1) states that a party waives any error to an evidentiary ruling unless they object and state the specific grounds for the objection, unless the specific ground for the objection is apparent from the context. State v. Sibert (1994),98 Ohio App.3d 412, 422. In this case, the trial court's comments show that it was focused on whether the statements were hearsay and never gave any indication that it understood that Schewirey was challenging whether the admission of those statements violated his rights under the Confrontation Clause.
 {¶ 17} An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus. In this case, Officer Lamb's testimony regarding what Meagan's mother told her was not crucial to the State's case against Schewirey, especially since Meagan got on the stand herself and testified. The outcome of the trial would not clearly have been otherwise if this evidence had been excluded. Accordingly, Schewirey's Confrontation Clause arguments concerning the admission of these statements are meritless.
 {¶ 18} Of course, not all hearsay implicates the Confrontation Clause's core concerns, so evidence can be improperly admitted hearsay without violating the Sixth Amendment. Crawford at 51. Evid.R. 802 generally prohibits the introduction of hearsay unless the evidence falls under a specific exception to the hearsay prohibition. Hearsay is, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "The purpose of the hearsay rule is to keep untrustworthy evidence, particularly evidence that is not subject to cross-examination, away from the jury or trier of fact." State v.Crabble, 7th Dist. No. 02 BA 24, 2003-Ohio-4884, at ¶ 7.
 {¶ 19} There are many exceptions to the hearsay rule. See Evid.R. 803 and 804. These exceptions allow for the introduction of many types of out-of-court statements because they are inherently trustworthy.Mastran v. Urichich (1988), 37 Ohio St.3d 44, 47. None of those exceptions apply to Officer Lamb's testimony, and the State does not argue to the contrary. However, the testimony of Meagan, Paul, and Dawna were not hearsay.
 {¶ 20} Evid.R. 801(D) (1 )b) provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement and the statement is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." In this case, Schewirey's defense strategy was to show that Meagan, Paul, and Dawna fabricated stories of abuse because they did not like Schewirey. Counsel attempted to show that the children would allege abuse, then deny that abuse, or vice versa, and make inconsistent statements concerning what happened to them. Officer Lamb's testimony, therefore, was an attempt by the State to rehabilitate these witnesses against those charges. Since the children testified at trial and were subject to cross-examination, these statements were not hearsay under Evid.R. 801(D) (1 )(b) and the trial court did not abuse its discretion by allowing this testimony.
 {¶ 21} The same does not hold true about the mother's statements to Officer Lamb. The children's mother did not testify at trial and there is no indication that her statements fall under a hearsay exception. However, even if the trial court did abuse its discretion by allowing this testimony, any such error was harmless. As stated above, this testimony was not the focus of the State's case and is merely repetitive of the most damaging testimony provided by Meagan and Paul.
 {¶ 22} Schewirey's arguments with regard to Officer Lamb's testimony are meritless. The testimony regarding the statements of the children was not hearsay and did not violate the Confrontation Clause. Schewirey waived any constitutional challenge to the statements the mother gave and it appears the introduction of those statements was harmless.
 Statements to Doctor {¶ 23} Schewirey also challenges the testimony of Dr. Dewar, who told the jury that Meagan told her of "multiple episodes of sexual abuse which began at the age of 12 years." However, Schewirey does not claim that these statements were hearsay. Instead, his challenge on appeal is solely that these statements violated his rights under the Confrontation Clause. These arguments are the subject of Schewirey's second assignment of error.
 The Right to Confrontation {¶ 24} In his second assignment of error, Schewirey argues:
 {¶ 25} "The trial court erred by failing to strike the testimony of Meagan Latimer."
 {¶ 26} Schewirey claims that the trial court should have stricken the testimony of Meagan Latimer because she was uncooperative and refused to give substantive answers to the questions posed to her on cross-examination. He contends that her actions denied him the right to confront the witnesses against him.
 {¶ 27} In this case, Meagan testified against Schewirey, stating that he had raped her repeatedly when she was twelve years old. On cross-examination, Schewirey attempted to question various aspects of Meagan's version of events, including, for instance, her age and/or grade at various times she describes the alleged rapes. Meagan's answers to these questions consisted largely of "I don't know" or "I don't remember." At one point, the trial court held an in-chambers conference to tell Meagan she appeared to be uncooperative. It instructed Meagan "to answer the questions that are asked of you." At the conclusion of Meagan's testimony, Schewirey moved to strike it based on her evasiveness during cross-examination. The trial court denied that motion.
 {¶ 28} A trial court's decision either granting or denying a motion to strike will not be reversed on appeal absent an abuse of discretion.Riley v. Langer (1994), 95 Ohio App.3d 151, 157. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 29} The Sixth Amendment's Confrontation Clause provides that, "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." Crawford v.Washington (2004), 541 U.S. 36, 41. The Confrontation Clause was designed to prohibit the "use of ex parte examinations as evidence against the accused" and prevent the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 50, 53-54. This protection allows a criminal defendant the opportunity to confront his or her accusing witness face-to-face in open court for truth-testing cross-examinations and to give the jury an opportunity to judge the credibility of the witness through observation of the witness's demeanor. Mattox v. UnitedStates (1895), 156 U.S. 237, 242-43. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer (1985),474 U.S. 15, 20.
 {¶ 30} In this case, Schewirey was given the opportunity to cross-examine Meagan and his counsel took advantage of that opportunity. His complaint is that Meagan's behavior on the stand deprived him of the opportunity for an effective cross-examination.
 {¶ 31} Schewirey's argument focuses on his desire to engage in a truth-telling cross-examination while ignoring the golden opportunity he was presented to demonstrate Meagan's lack of credibility to the jury. When a witness acts evasively on cross-examination, it reflects badly on her credibility. State v. Chandler (1984), 19 Ohio App.3d 109, 112;State v. Veras (July 8, 1999), 8th Dist. Nos. 74416, 74466; State v.Brewer (Aug. 24, 1994), 2nd Dist. No. 13866, at 8. Schewirey's counsel took advantage of the opportunity to attack Meagan's credibility in his closing argument.
 {¶ 32} "[L]et's talk a little bit about Meagan Latimer, the first person to testify in this case. I have been at this for 30 years, ladies and gentlemen. I have never seen a witness behave the way Meagan Latimer did on the witness stand. She never once looked at me. She pounded her feet. She wouldn't answer the prosecutor's questions. She sat there and there were periods of time, two or three or four minutes that would go by, such that finally we took her out of here and brought her back in. It got worse as it went along. She was impossible to cross-examine. I have never been faced with something like that in my entire career. But that tells me something about this witness, and it ought to tell you folks something, too. The issue in this case, and I told you from the first issue in this case is the credibility of these witnesses."
 {¶ 33} In this case, Schewirey was given the opportunity to cross-examine Meagan and her behavior on the witness stand allowed him to argue that her testimony was not credible. One of the primary objectives of the Confrontation Clause is to protect a defendant's ability to attack the credibility of his accuser through the jury's observation of the witness's behavior. Schewirey's rights under the Confrontation Clause were protected by his opportunity to cross-examine Meagan and his arguments to the contrary are meritless.
 Diagnosis of Child Abuse {¶ 34} In his third assignment of error, Schewirey argues:
 {¶ 35} "The trial court erred by permitting a doctor to give a diagnosis of child abuse."
 {¶ 36} Dr. Dewar testified pursuant to a video deposition that was played for the jury. Prior to that deposition, Schewirey objected to the playing of her conclusion that Meagan was a victim of child sexual abuse. According to Schewirey, there was no physical evidence supporting Dr. Dewar's conclusion, so her opinion did nothing but give her opinion of the veracity of Meagan's statements. He further argues that it was unnecessary to have an expert testify since her testimony and findings were within the common experience and knowledge of lay people.
 {¶ 37} Evid.R. 702 permits the use of testimony of an expert if the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue. A person is an expert if they have knowledge, skill, experience, training or education regarding the subject matter of the testimony. Evid.R. 702(B). An expert's testimony is only needed if that testimony is "'sufficiently beyond common experience." State v. Buell (1986), 22 Ohio St.3d 124, 131, quotingPeople v. McDonald (1984), 690 P.2d 709, 721; Evid.R. 702(A). Finally, an expert's testimony must be based on "reliable scientific, technical, or other specialized information." Evid.R. 702(C). The Ohio Supreme Court has allowed testimony by doctors who have concluded that a particular child is the victim of sexual abuse. State v. Boston (1989),46 Ohio St.3d 108, 126.
 {¶ 38} In this case, there is no question concerning whether Dr. Dewar is, in fact, an expert. Instead, Schewirey contends both that Dr. Dewar's conclusions were within the common experience of lay people and that her opinion did nothing but state that Meagan's allegations were credible.
 {¶ 39} In Boston, the Ohio Supreme Court noted that "[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse." Id. at 128. Therefore, "an expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision and is, therefore, admissible pursuant to Evid.R. 702 and 704." Id.
 {¶ 40} Nevertheless, an expert cannot give an opinion of the veracity of the statements of a child declarant. Id. at syllabus. There is a difference "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility." State v.Stowers, 81 Ohio St.3d 260, 262, 1998-Ohio-0632. Thus, an expert can testify that a child's behavior is consistent with the behavior of other children who had been sexually abused. Id.
 {¶ 41} In this case, Dr. Dewar is a medical doctor who performed a medical examination on Meagan. Dr. Dewar's physical findings about Meagan were normal and laboratory tests were negative, but Dr. Dewar testified that this was not unusual since "between 65 to 85 percent of exams [of proven victims of child sexual abuse] are normal." Dr. Dewar testified on cross-examination that an allegation of sexual abuse cannot be proven or disproven "with a physical finding of the normal."
 {¶ 42} During her testimony, Dr. Dewar opined that Meagan "was a victim of child sexual abuse." Because the examination was normal, Dr. Dewar based her conclusion primarily on the history that Meagan provided to her. Schewirey argues that this testimony is the functional equivalent of giving an opinion on the veracity of the child.
 {¶ 43} The Ninth District's opinion in State v. Burrell (1993),89 Ohio App.3d 737, is instructive. In that case, an alleged victim of sexual abuse was examined by a doctor. The physical examination the doctor performed on the child showed nothing, yet the doctor believed that the child "was sexually assaulted and molested." On cross-examination, he admitted that he was basing his opinion in this regard solely on the history the child gave him. The Ninth District concluded that this was an improper opinion on the veracity of the child.
 {¶ 44} "As noted previously, Evid.R. 705 permits an expert to testify in terms of opinion, `after disclosure of the underlying facts or data' that form the foundation for that opinion. On direct examination, Powell testified that the foundation for his opinion that L had been sexually abused was the physical examination he conducted on her and the history she gave him, coupled with his training, education and experience. Defendant's cross-examination of him was appropriate to further explore that foundation. By that cross-examination, defendant first established that, in fact, Powell's physical examination did not aid him in concluding that L had been sexually abused. At that point, it was appropriate for defendant to seek clarification about whether the only foundation for Powell's opinion was, in fact, a subsidiary opinion that L had been truthful in relating her history to him. In this context, defendant did not elicit an improper response from Powell. Rather, he was properly exploring whether the opinion expressed by Powell on direct examination was supported by an appropriate foundation. The error was not contained in Powell's response on cross-examination. Rather, that response revealed that his opinion on direct examination lacked an appropriate foundation. Powell's testimony on cross-examination that what he was `really saying' on direct examination was that he believed L, brought this case within the prohibition found in Boston against an expert testifying `as to the expert's opinion of the veracity of the statements of a child declarant.' In view of Powell's testimony on cross-examination, that part of his testimony on direct examination in which he opined that L had been sexually abused, should have been stricken in accord with Boston." Id. at 745.
 {¶ 45} The Ninth District reversed the conviction and remanded the case for a new trial because the expert's opinion that the child was abused was based solely on his assessment of the child's veracity.
 {¶ 46} Judge Christley from the Eleventh District wrote in a dissenting opinion that she would reverse a conviction based on similar facts even though the error was neither objected to in the trial court nor raised on appeal. See State v. Plymale, 11th Dist. No. 99-P-0012, 2001-Ohio-8892 (Christley, J., dissenting). In that case, a physical examination revealed no signs of sexual abuse and a nurse practitioner based her opinion that the child was a victim of sexual abuse "solely on the child's statements." Id. at 6. "In other words, Abbott's testimony that the victim had been sexually abused merely constituted an affirmation of the child's allegations." Id.
 {¶ 47} However, Judge Christley was quick to point out that an expert can, in certain circumstances, render an opinion on whether a child was sexually abused without physical evidence.
 {¶ 48} "I do not believe that there must always be physical evidence present before an expert can render a valid opinion on whether a child has been sexually abused. Rather, there simply has to be something other than the child's unsupported allegations that assisted the expert in arriving at his or her opinion. This would obviously include physical evidence, but could also involve the expert's observations of the child's demeanor or other indicators tending to show the presence of sexual abuse."
 {¶ 49} Judge Christley's views on this matter were adopted by the Second District in State v. Muhleka, 2nd Dist. No. 19827,2004-Ohio-1822. In that case, an expert opined that the child was a victim of sexual abuse despite the fact that there were no physical findings. However, the court found that the opinion was admissible because the expert relied upon "the information he received from his examination of the victim, the history of the family and the case, information he received from Trula Muhleka and Griesdorn, the interview with the victim, the review of the victim's drawing, and his past experience of dealing with approximately two hundred physically or sexually abused children" when reaching his opinion that the child was sexually abused. Id. at ¶ 39. Since his findings were "based upon all of the data he had in front of him, not just the victim's statements," his opinion was not just a statement on the veracity of the child. Id.
 {¶ 50} We agree with both the decisions in Burrell andMuhleka. An expert does not need to say, "I believe the child was sexually abused," in order to give an improper opinion on the child's veracity. When an expert bases their diagnosis on nothing more than what the child tells them, then their "diagnosis" is nothing more than an opinion on the child's veracity. To say otherwise would elevate form over substance. However, an expert does not need physical findings to reach a diagnosis. If the expert relies on other facts in addition to the child's statements, then the expert's opinion will not be an improper statement on the child's veracity.
 {¶ 51} The facts of this case resemble those in Burrell rather than those in Muhleka. Dr. Dewar admitted that her opinion was based solely on the history that Meagan provided and on the physical exam. Since the physical exam's results were normal, the doctor admitted that her opinion was based on what Meagan told her. Thus, Dr. Dewar's opinion that Meagan was sexually abused is nothing more than her opinion on the veracity of Meagan's allegations. Accordingly, the trial court abused its discretion when it allowed this testimony over Schewirey's objections.
 {¶ 52} In Boston, the Ohio Supreme Court stated that the admission of an expert opinion on the veracity of a child is "egregious, prejudicial and constitutes reversible error." Id. at 128. This is especially true when the case is little more than a credibility contest between the defendant and his accusers. Burrell at 746.
 {¶ 53} In this case, there is no physical evidence of abuse and the case came down to who the jury believed, Schewirey or his child-accusers. Accordingly, the introduction of an expert opinion on the veracity of a child-accuser is highly prejudicial to Schwirey. Schewirey's third assignment of error is meritorious.
 Moot Assignments of Error {¶ 54} In his other two assignments of error, Schewirey argues:
 {¶ 55} "Cumulative error prejudiced Mr. Schewirey."
 {¶ 56} "The trial court erred by imposing an illegal sentence."
 {¶ 57} These assignments of error are both moot in light of our resolution of Schewirey's third assignment of error and we will not address them in this appeal.
 Conclusion {¶ 58} In this case, the trial court committed prejudicial error when it allowed, over objection, an expert to give an opinion on whether a child was sexually abused because the only foundation for that opinion was the child's unverified allegations. The expert's opinion was nothing more than an opinion on the veracity of the accuser, which is inappropriate and highly prejudicial. Accordingly, Schewirey's conviction is reversed and this case is remanded to the trial court for further proceedings.
Donofrio, P.J., concurs.
Waite, J., concurs.