JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Richard Winterich ("defendant"), appeals his convictions in the Court of Common Pleas for rape and gross sexual imposition. For the following reasons, we reverse and remand.
 {¶ 2} On September 22, 2005, defendant was indicted by the Cuyahoga County Grand Jury for four counts of rape of a minor in violation of R.C. 2907.02, with sexually violent predator specifications; one count of kidnaping in violation of R.C. 2905.01; three counts of gross sexual imposition in violation of R.C. 2907.05, with sexually violent predator specifications; and two counts of endangering children in violation of R.C. 2919.22. On October 17, 2006, a jury trial began.[1]
 {¶ 3} At trial, the victim gave the following testimony: She was the biological daughter of the defendant and was eight years old at the time of trial. She was between the ages of five and six at the time of the incidents. The first incident occurred at the defendant's house sometime during 2003 or 2004. It was nighttime and the victim was sleeping in bed with the defendant and her mother. When the mother fell asleep, the defendant inserted his fingers into the victim's "private." She told defendant to stop but he refused. The victim tried to wake her mom up but was unsuccessful. The victim told her mother what happened in the morning but her mother did not do anything. *Page 4 
 {¶ 4} The second incident occurred in May 2005 at the defendant's house as well. It was daytime and the victim was in the kitchen. The victim's mother was home taking a nap. The defendant inserted his fingers into the victim's "private" again. The defendant told her that if she told anyone he would keep doing it. The victim said that she told her aunt and her sister anyway because it hurt "bad."
 {¶ 5} The State called Jennifer McPherson ("Jennifer"), the victim's older half-sister. Jennifer and the victim have the same mother. Jennifer was 23 years old at the time of trial. The victim lived with Jennifer and Jennifer was trying to get legal custody of her. Jennifer testified that she did not know the defendant until 2004 when he appeared at court trying to get custody of the victim. Jennifer took the victim to the hospital in 2004 and 2005 after the victim made allegations of sexual abuse against the defendant.
 {¶ 6} The State called Shontai Lamar ("Shontai"), the victim's half-sister. Shontai and the victim have the same mother. Shontai was 20 years old at the time of trial. Shontai testified that in May 2005, the victim came home from a visit with the defendant and told her what defendant did to her. Shontai told her aunt what the victim told her.
 {¶ 7} The State called Joyce Lamar ("Joyce"), the victim's aunt. She is the biological sister of Patty, the victim's mother. She is estranged from Patty because of Patty's drug and alcohol use. The victim, as well as Patty's four other children, live with her. Joyce has legal custody of the victim. In the summer of 2004, Joyce *Page 5 
learned about the victim's first allegation of sexual abuse against the defendant. Approximately one year later, the victim told Joyce about the second incident. The victim was upset and crying.
 {¶ 8} The State called Teriea Anderson ("Ms. Anderson"), a social worker with the intake sex abuse unit at Children and Family Services. On March 16, 2004, Ms. Anderson spoke with the victim at her school with her teacher present. Ms. Anderson testified that the victim told her that her "daddy touched her," that the victim pointed to her vaginal area, that the victim circled the vaginal area on the anatomical drawing, and the victim told her that her daddy touched her "inside" her vagina. Ms. Anderson testified that she completed a risk assessment form as part of her investigation and made a disposition that "sex abuse was indicated." Ms. Anderson also testified that during her interview with the victim, she used her own language, seemed believable and did not seem suggestible.
 {¶ 9} The State called Christopher Walker ("Mr. Walker"), who also worked in the sex abuse intake department at Children and Family Services. He testified that he was assigned to this case in early May 2005 and interviewed the victim the same day he received the referral. Mr. Walker testified that the victim told him that her daddy "stuck his finger" in her "private parts" while she was sleeping in bed with him and her mother. Mr. Walker also spoke with the victim's sister, aunt, and the police. Mr. Walker testified that he completed a risk assessment form as part of his investigation and made a disposition that "sex abuse was indicated." Mr. Walker *Page 6 
testified that the victim was consistent and did not seem suggestible. Mr. Walker referred the victim to the Rape Crisis Center.
 {¶ 10} The State called Dr. Beth Manning ("Dr. Manning"), an emergency room doctor at University Hospitals, who examined the victim on May 2, 2005. She testified that the victim told her that the defendant touched her in her "private" and that it hurt. Dr. Manning observed that the victim's vaginal area was red and the hymen was intact. She testified that she initially made a diagnosis of "possible sexual assault," but her final diagnosis was "presumed sexual assault."
 {¶ 11} The State called Chris Woodall ("Mr. Woodall"), the on-going social worker with Children and Family Services. He had been assigned to the family in August 2003, due to issues of neglect by the victim's mother. The victim's older sister Jennifer and defendant were seeking custody of the victim. Mr. Woodall was investigating the suitability of both to be the victim's guardian. Mr. Woodall learned of the sex abuse allegations against the defendant in December 2004. He testified that the defendant denied the allegations and felt that the family was telling the victim to make up stories so that he could not get custody of her. The State also called Detective Mark Schmitt ("Det. Schmitt") of the Cleveland Heights Police Department. He testified that he received a referral from Children and Family Services about the victim. On June 15, 2005, Det. Schmitt interviewed the victim and the victim's sisters and mother. Det. Schmitt said that the victim's responses *Page 7 
were consistent with the report he received from Children and Family Services. A short time thereafter, he presented the case to the Grand Jury.
 {¶ 12} The State called Lauren McAliley ("McAliley"), a nurse practitioner at Rainbow Babies and Childrens' Hospital, who examined the victim on May 26, 2004. McAliley reported that the medical examinations were nonspecific, which means that she did not find any signs or symptoms suggestive of sexual abuse that might provide her with findings of sexual or physical abuse. She explained, however, that these results do not necessarily indicate that sexual abuse had not occurred because of the length of time since the alleged abuse occurred. She testified that she interviewed the victim and the victim told her that the defendant touched her "down there." McAliley's diagnosis was that the victim had "very possibly" been sexually abused because the victim was "consistent over time" with her disclosure, used her own language, and did not seem "suggestible."
 {¶ 13} The defense did not present any witnesses.
 {¶ 14} On October 20, 2006, defendant was found guilty of two counts of rape and two counts of gross sexual imposition. He was acquitted of the sexually violent predator specifications.
 {¶ 15} On November 9, 2006, defendant was sentenced to two concurrent terms of life imprisonment for the rape convictions and two concurrent terms of five years for the gross sexual imposition, to run concurrently. *Page 8 
 {¶ 16} Defendant timely appeals and raises four assignments of error for our review.
 {¶ 17} "I. The trial court committed reversible error by permitting five expert witnesses to opine that the accuser was telling the truth in violation of the due process clause, the Ohio Supreme Court's decision in State v. Boston, and the Ohio Rules of Evidence."
 {¶ 18} In his first assignment of error, defendant argues that the trial court erred by permitting several witnesses to testify with regard to the credibility of the victim. Defendant argues that their testimony improperly bolstered the victim's testimony.
 {¶ 19} Defendant relies upon State v. Boston (1989),46 Ohio St.3d 108, 128, for the proposition that an expert may not testify as to the truthfulness of a child's statements. In Boston, the expert witness was permitted to give her opinion that the child victim "had not fantasized her abuse" and that the child victim "had not been programmed to make accusations against her father." Id. at 128. The expert witness also testified that the child victim told the truth. In Boston, the expert relied on a medical examination of the victim, statements made by the victim, and the child's medical history in opining that the child was sexually abused. The Supreme Court of Ohio held that it was more than harmless error to allow the expert witness to testify as to the veracity of the child victim's statements. Id. at 129. Rather, such an opinion constitutes a "litmus test of the victim's credibility, which infringes upon the *Page 9 
fact finder's responsibility to make their own assessment of the veracity of witnesses." Id.
 {¶ 20} After careful review of the transcripts, we find that the trial court did err in admitting the testimony of some of these witnesses. We shall address each witness below, but ultimately conclude that several of the witnesses did give improper testimony.
Ms. Anderson and Mr. Walker
 {¶ 21} Social workers are permitted to testify to theirdisposition in an alleged sexual abuse case. See State v. Smelcer
(1993), 89 Ohio App.3d 115. Social workers may also comment on theconsistency of an alleged victim's statements. See In re D.D., Cuyahoga App. No. 89042, 2008-Ohio-222 (nurse may testify regarding the consistency of the details remembered by the victim); In re W.P., Cuyahoga App. No. 84114, 2004-Ohio-6627 (same); State v. Demiduk (June 24, 1998), Columbiana App. No. 96-C0-16 (physician's observation that the alleged victim was consistent was simply a factor physician considered in making her analysis, and was not improper testimony to the alleged victim's veracity). However, social workers may not testify as to the truthfulness or credibility of the alleged victim. Id.
 {¶ 22} Here, Mr. Walker testified that the victim's account to him was consistent and that he did not lead her into giving answers, rather the victim "told *Page 10 
him" what happened.[2] Mr. Walker did not comment on the victim's credibility or her truthfulness. Accordingly, we do not find that Mr. Walker gave any improper testimony.
 {¶ 23} However, we find that Ms. Anderson's testimony regarding her opinion that the victim "seemed believable" was improper because it rendered an expert opinion concerning the veracity of the victim. Ms. Anderson testified that she has seen "thousands" of child abuse cases. Accordingly, it was very likely that the jury would have deferred to her expert opinion on the "believability" of the victim.
Dr. Manning and Nurse McAliley
 {¶ 24} A medical expert may make a diagnosis of sexual abuse, despite a lack of physical findings, if the expert relies upon other facts in addition to the child's statements in reaching such diagnosis. In reBrooks, Licking App. No. 07-CA-74, 2008-Ohio-119. However, "there simply has to be something other than the child's unsupported allegations that assisted the expert in arriving at his or her opinion. This would obviously include physical evidence, but could also involve the expert's observations of the child's demeanor or other indicators tending to show the presence of sexual abuse." See State v. Plymale, 11th
Dist. No. 99-P-0012, 2001-Ohio-8892, 2001-Ohio-8893 (Christley, J., dissenting); State v. Muhleka, 2nd Dist. No. 19827,2004-Ohio-1822. *Page 11 
 {¶ 25} Here, Dr. Manning testified that she diagnosed the alleged sexual abuse as "presumed" because she found redness around the victim's vagina. However, defendant's cross-examination of her established that Dr. Manning's physical examination did not aid her in concluding that the victim had been sexually abused, since she admitted that the redness could have been caused by any number of things. Rather, Dr. Manning admitted that her diagnosis was based on the statements made by the victim. Under the circumstances presented in this case, we find that the State failed to establish a proper foundation for Dr. Manning's opinion. Rather, Dr. Manning's expert opinion that the child was a "presumed" victim of sexual abuse was merely an "affirmation of the child's allegations." See State v. Schewirey, Mahoning App. No. 05 MA 155,2006-Ohio-7054.
 {¶ 26} Next, Nurse McAliley testified that she diagnosed the alleged sexual abuse as "very possible" based upon her medical examination and her interview with the victim.[3] However, McAliley also testified that there was no medical evidence that the victim had been sexually abused and that the results of the medical examination were nonspecific.[4] Similar to Dr. Manning above, we find that the State failed to establish a proper foundation for McAliley's opinion that the victim had "very possibl[y]" been sexually abused. Under the circumstances presented in this case, *Page 12 
McAliley's diagnosis "is nothing more than an opinion on the child's veracity." See State v. Schewirey, supra.
 {¶ 27} Cases involving sexual abuse are often "credibility contests" between the victim and the defendant. State v. Burrell (1993),89 Ohio App.3d 737, 746. Permitting the introduction of an expert's opinion, which relies solely on the child's statements, is tantamount to permitting the expert to testify as to the child's veracity. Id.;State v. Knight, Cuyahoga App. No. 87737, 2006-Ohio 6437. Here, we find that defendant did not receive a fair trial when Anderson, Nurse McAliley and Dr. Manning were permitted to testify as to the victim's veracity without laying a proper foundation for their opinions. As the Supreme Court in Boston, supra, noted, "the admission of [such] testimony was not only improper-it was egregious, prejudicial, and constitutes reversible error." Boston, supra at 125.
 {¶ 28} Assignment of Error I is sustained.
 {¶ 29} "II. The trial court committed reversible error by permitting five expert witnesses to opine that sexual abuse had occurred based on their assessment of the accuser's credibility where there was no medical evidence of sexual abuse.
 {¶ 30} "III. The trial court committed reversible error by permitting expert witnesses to repeat out-of-court statements of the accuser.
 {¶ 31} "IV. The State committed reversible error in closing argument by opining regarding the credibility of the accuser, by commenting on the defendant-appellant's failure to testify, and by misrepresenting the evidence and the law. *Page 13 
 {¶ 32} "V. In the alternative, if the court finds that defendant-appellant's counsel failed properly to preserve these errors for appeal, defendant-appellant was denied a fair trial due to ineffective assistance of counsel."
 {¶ 33} Given our disposition of Assignment of Error I, defendant's remaining assignments of error are rendered moot. See App.R. 12(A)(1)(c).
 {¶ 34} Judgement reversed and remanded.
It is ordered that appellant recover from appellee his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and ANN DYKE, J., CONCUR
[1] Prior to trial, the State dismissed two of the rape counts, one count of kidnapping, one count of gross sexual imposition, and both counts of child endangerment. The sexually violent predator specifications were tried to the bench.
[2] Tr. 448.
[3] Tr. 536.
[4] Tr. 534. *Page 1