JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Terrell West assigns 20 errors for our review.[1] We conclude his assigned error five that challenges the expert opinion of nurse-practitioner Lauren McAliley on due process grounds is well taken. Therefore, we reverse this matter for a new trial. The apposite facts follow.
 {¶ 2} The facts of this case involve the detailed description of numerous alleged rapes perpetuated on a child by his cousin, appellant Terrell West, over a period of years.[2] No medical or physical evidence was introduced at trial. However, the State did introduce the expert testimony of nurse-practitioner Lauren McAliley, who testified as follows in the State's case in chief:
 "Q. Did you order any laboratory studies when you were done with your exam?
 A. Yes, I did.
 Q. Which ones?
 A. I ordered nucleic acid amplification tests, which are urine tests for gonorrhea and chlamydia, and I ordered a urinalysis. *Page 2 
 Q. And what was the purpose in ordering those exams, or those tests?
 A. There actually wasn't a medical indication in this case, given the nature of the abuse and what was thought to be known about the alleged perpetrator, and also the time lapse, but this was a child who was very fearful, even though he didn't have any signs or symptoms consistent with a sexually transmitted disease, that he could have one, so it was done for his peace of mind.
 Q. And then do you make an ultimate diagnosis?
 A. Yes.
 Q. And is it then done by history?
 A. History, physical, labs, all combined, yes.
 Q. And what would that diagnosis be?
 A. That there was a good likelihood that he had been sexually abused as he described and it should be investigated to the full extent possible."
 {¶ 3} In State v. Boston, [3] the Ohio Supreme Court has held that testimony similar to McAliley's is forbidden on due process grounds. In fact, in two prior cases involving the similar testimony of Lauren McAliley, this court has reversed for new trial.[4] InKnight, McAliley testified that she performed a medical examination upon L.S. in August of 2005 regarding an accusation that the victim had been sexually *Page 3 
abused by her stepfather. McAliley reported that the medical examinations were unremarkable, which means that she did not find any signs or symptoms suggestive of physical abuse, sexual abuse, or medical conditions that might provide her with findings of sexual or physical abuse. McAliley explained, however, that these results do not necessarily indicate that sexual abuse has not occurred.
 {¶ 4} In Knight, McAliley also testified that she took a history from L.S. as to the alleged sexual assaults. Finally, McAliley testified to a reasonable degree of medical certainty that L.S. was sexually abused. McAliley explained that she based her opinion on the history L.S. provided, the medical examination, laboratory results, and information provided by her family and the referring agents.
 {¶ 5} In Knight, this court held that McAliley's opinion that the child victim had been sexually abused constituted an opinion as to the victim's veracity and was impermissible. However, the State contends in the instant case McAliley did not express her opinion to a reasonable degree of medical certainty; and thus, Knight is distinguishable. The language is the same whether medical certainty or likelihood of occurrence is used. In fact, this court has held that the expert crosses the line unless the expert couches its conclusion in language that states the victim's testimony is indicative of someone who has been raped or indicates rape.[5] We found a difference between an expert who says the victim has been "probably" or "possibly" raped and testimony by the expert that her findings "indicate" rape. *Page 4 
Stating that the expert's findings are indicative of rape is not the same as commenting on the victim's veracity. We have historically held that an expert may state her findings and opine that these findings are indicative of rape so as not to cross the bright line ofBoston.
 {¶ 6} Furthermore, in our recent decision in State v. Winterich, we were again called on to consider the testimony of McAliley, the nurse-practitioner herein. In Winterich, McAliley testified that she interviewed the victim and the victim told her that the defendant touched her "down there." McAliley testified that her diagnosis was that the victim had "very possibly" been sexually abused because the victim was: "consistent over time" with her disclosure, used her own language, and did not seem "suggestible."[6] *Page 5 
 {¶ 7} In Winterich, this court stated: "* * *[W]e find that the State failed to establish a proper foundation for McAliley's opinion that the victim had `very possibl[y]' been sexually abused. Under the circumstances presented in this case, McAliley's diagnosis is nothing more than an opinion on the child's veracity."[7] In this case, the victim K.R. related the facts of what happened to McAliley, no physical evidence existed, and McAliley based her diagnosis solely on her assessment of K.R.'s veracity. Even though McAliley did not use the language "reasonable degree of medical certainty" in her testimony, she stated that K.R. provided rich detail and a consistent story over time, and she thought there was a "good likelihood" that he had been raped, which served to affirm K.R.'s allegations. As such, McAliley's testimony herein is akin to her testimony in Knight as it served to bolster K.R.'s credibility in the eyes of the jurors. It is more than harmless error to allow the expert witness to testify as to the veracity of a child victim's statements.[8] *Page 6 
 {¶ 8} We are mindful that a medical expert may make a diagnosis of sexual abuse, despite a lack of physical findings, if the expert relies upon other facts in addition to the child's statements in reaching such diagnosis.[9] Cases involving sexual abuse are often "credibility contests" between the victim and the defendant.[10] Thus, the introduction of McAliley's opinion on the veracity of K.R. was highly prejudicial. The admission of an expert opinion on the veracity of a child is "egregious, prejudicial and constitutes reversible error."[11] Accordingly, we sustain the fifth assigned error.
 {¶ 9} Our determination as to West's fifth assigned error is dispositive of the instant appeal. Thus, we decline to address the remaining assigned error as moot.[12]
Judgment reversed for a new trial.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 7 
SEAN C. GALLAGHER, P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR
 APPENDIX
Assignments of Error "I. Defendant was denied due process of law when the indictment contained identical counts of rape and kidnapping and failed to particularize the date of the offense."
 "II. Defendant was denied due process of law when the court overruled his motion to dismiss based upon lack of a speedy trial."
 "III. Defendant was denied due process of law when the trial court refused to order an independent psychological examination of K.R., Jr."
 "IV. Defendant was denied due process of law when the defendant was not bound over from the juvenile court."
 "V. Defendant was denied due process of law and a fair trial when the court allowed evidence from a nurse practitioner, Lauren McAliley, enhancing the credibility of K.R., Jr."
 "VI. Defendant was denied due process of law when his conviction was based on hearsay testimony concerning allegations of sexual abuse."
 "VII. Defendant was denied due process of law and a fair trial when the court permitted a social worker to relate that K.R., Jr. told her of defendant's alleged sexual abuse." *Page 8 
 "VIII. Defendant was denied his constitutional right to present a defense when he was denied access to evidence."
 "IX. Defendant was denied due process of law and a fair trial when the court would not allow Detective Pamela Berg to answer defense counsel's questions concerning his statement." *Page 9 
 "X. Defendant was denied due process of law and a fair trial when the court closed a courtroom without defendant's consent."
 "XI. Defendant was denied due process of law when the court modified the statutory definition of force."
 "XII. Defendant was denied due process of law when the court amended the indictment and bill of particulars by including specific references to certain locations which, in effect, assumed the existence of those facts."
 "XIII. Defendant was denied due process of law when the court amended kidnapping which allowed defendant to be convicted under duplicitous indictment."
 "XIV. Defendant was denied due process of law when he was allowed to be convicted without proof of culpable mental state."
 "XV. Defendant was denied due process of law when the court diluted the definition of purposely."
 "XVI. Defendant was denied due process of law when his motion for judgment of acquittal was overruled and his convictions are against the manifest weight of the evidence."
 "XVII. Defendant was subjected to multiple punishments."
 "XVIII. Defendant was denied due process of law when he was found to be a sexual predator."
 "XIX. Defendant was denied assistance of counsel."
 "XX. Defendant was denied the effective assistance of counsel."
[1] See Appendix.
[2] We refer to the children by their initials pursuant to this court's established policy not to disclose the names of children. Here, we refer to the victim in this case as K.R.
[3] (1989), 46 Ohio St.3d 108.
[4] State v. Knight, Cuyahoga App. No. 87737, 2006-Ohio-6437 andState v. Winterich, Cuyahoga App. No. 89581, 2008-Ohio-1813.
[5] State v. Whitfield, Cuyahoga App. No. 89750, 2008-Ohio-1090.
[6] State v. Winterich, 2008-Ohio-1813.
[7] Id. See, also, State v. Schewirey, 7th Dist. No. 05 MA 155, 2006-Ohio-7054.
[8] In re Brooks, 5th Dist. No. 07-CA-74,2008-Ohio-119.
[9] Winterich, supra citing, State v. Burrell (1993),89 Ohio App.3d 737, 746.
[10] Id.
[11] Boston, supra at 128.
[12] App. R. 12(A)(1)(c). *Page 1