[Cite as *In re B.W.*, 2025-Ohio-1148.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| In the matter of: | : | No. 24AP-182 | |
| | | (C.P.C. No. 21JU-7835) | |
| [B.W., | : | | |
| | | (REGULAR CALENDAR) | |
| Appellant]. | : | | |

D E C I S I O N

Rendered on March 31, 2025

**On brief:** *Koffel, Brininger, & Nesbitt*, and *Bradley P. Koffel*; *Giorgianni Law LLC*, and *Paul Giorgianni*, for appellant. **Argued:** *Paul Giorgianni.*

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers.*

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

JAMISON, P.J.

{¶ 1} Appellant, B.W., appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that found him delinquent of one count of rape. For the reasons below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} B.W. and the victim, both 14 years old, were dating. On June 1, 2021, they were in the basement of B.W.'s house, when the victim alleged she was raped by B.W. The victim was taken to the hospital by her parents later that day, where a forensic interview and medical examination was conducted.

{¶ 3} Law enforcement was notified, and a search warrant was executed at B.W.'s house in the early morning hours of June 2, 2021. On August 12, 2021, law enforcement filed a complaint alleging B.W. was delinquent for committing the crime of rape in violation

of R.C. 2907.02(A)(2), a felony of the first degree. B.W. denied the allegations on August 27, 2021.

{¶ 4} The trial court conducted a four-day adjudicatory hearing on September 6, September 26, October 31, and November 7, 2022. On December 19, 2022, the magistrate issued a decision finding B.W. delinquent. On January 3, 2023, B.W., represented by new counsel, filed an objection to the magistrate's decision, and amended the objection on February 24, 2023. The court overruled the objection on August 7, 2023.

{¶ 5} On October 23, 2023, the magistrate conducted a dispositional hearing and issued a magistrate's decision on November 1, 2023, placing B.W. on a period of community control. B.W. filed an objection to the magistrate's decision on November 9, 2023, and the court held arguments on January 9, 2024. On February 27, 2024, the trial court overruled the objections and entered a final appealable order.

{¶ 6} B.W. filed a notice of appeal on March 12, 2024. B.W.'s requests for a stay in both the trial court and this court were denied.

## II. ASSIGNMENTS OF ERROR

{¶ 7} B.W. assigns the following three assignments of error for our review:

1. The finding that [B.W.] violated R.C. 2907.02(A)(2) is contrary to the manifest weight of the evidence.

2. The Juvenile Court erred by admitting testimony of Nurse Examiner Hornor that the results of the anogenital examination are consistent with sexual abuse.

3. The Juvenile Court abused its discretion by not re-opening the evidence to allow [B.W.] to testify.

## III. DISCUSSION

{¶ 8} B.W. argues in his first assignment of error that his delinquency finding was against the manifest weight of the evidence. B.W. does not dispute that he engaged in sexual intercourse with the victim on June 1, 2021, but insists that he did not force the sex act. B.W. contends that the victim's testimony is unreliable, and the evidence does not support the adjudication.

{¶ 9} In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror." *In re C.S.*, 2012-Ohio-2988, ¶ 27

(10th Dist.). Under this standard of review, we weigh the evidence and all reasonable inferences in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other, and "addresses the evidence's effect of inducing belief." (Internal quotation marks deleted and citations omitted.) *State v. Butler*, 2013-Ohio-5397, ¶ 12 (10th Dist.). When reviewing a manifest-weight challenge to a juvenile adjudication of delinquency, we apply the same standard of review applicable to adult criminal convictions. *In re C.S.*

{¶ 10} The appellate court must consider "the factfinder's superior, first-hand perspective in judging the demeanor and credibility of witnesses." (Internal quotation marks deleted and citations omitted.) *State v. Greenwood*, 2021-Ohio-921, ¶ 33 (10th Dist.). Accordingly, we afford great deference to the factfinder's determination of witness credibility. *State v. Redman*, 2011-Ohio-1894, ¶ 26 (10th Dist.), citing *State v. Jennings*, 2009-Ohio-6840, ¶ 55 (10th Dist.). The power to reverse on manifest-weight grounds should only be used in exceptional circumstances when " 'the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 11} R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Force is the element at issue here, and is statutorily defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). A defendant purposely compels his victim to submit by force or threat of force when he " 'uses physical force against [the victim], or creates the belief that physical force will be used if the victim does not submit.' " *State v. Durdin*, 2014-Ohio-5759, ¶ 38 (10th Dist.), quoting *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. "Force or the threat of force 'can be inferred from the circumstances surrounding the sexual conduct.' " *State v. Gary*, 2012-Ohio-5813, ¶ 5 (9th Dist.), quoting *Schaim* at paragraph one of the syllabus.

{¶ 12} The victim testified that B.W. used force to have sex without her consent. The visit began consensually, but became forcible after B.W. demanded sex. According to her trial testimony, she repeatedly asked B.W. to stop, but he did not. The victim testified that B.W. choked her and slapped her in the face to compel her to have sex.

{¶ 13} B.W. grabbed her throat harder and pulled down the victim's pants against her wishes. The victim let B.W. know that she was not okay with his actions, but he did not stop. B.W. ignored the victim's clear protests and continued to engage in sexual activity. The victim's testimony established the elements of rape. *State v. D.E.M.*, 2016-Ohio-5638 (10th Dist.).

{¶ 14} B.W. argues the forensic interview and the victim's testimony do not precisely match and asserts that the substantial inconsistencies rendered the victim's testimony unreliable. However, the presence of inconsistent evidence is not necessarily fatal. *State v. Rankin*, 2011-Ohio-5131, ¶ 29 (10th Dist.). A sexual abuse conviction will not be reversed on manifest-weight grounds "merely because inconsistent evidence was presented at trial." *State v. Jackson*, 2008-Ohio-1277, ¶ 11 (10th Dist.). "The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." *Id.*, citing *State v. Williams*, 2002-Ohio-4503, ¶ 58 (10th Dist.). We may not substitute our own judgment for that of the finder of fact. *State v. Awan*, 22 Ohio St.3d 120, 123 (1986).

{¶ 15} Furthermore, "the testimony of a rape victim, if believed, is sufficient to support each element of rape." *State v. Reinhardt*, 2004-Ohio-6443, ¶ 29 (10th Dist.). Corroborating physical evidence is not a prerequisite for a conviction. "[A] lack of physical evidence, standing alone, does not render a conviction against the manifest weight of the evidence when witness testimony is believed." *State v. Rigsbee*, 2023-Ohio-1494, ¶ 27 (10th Dist.).

{¶ 16} The victim testified that she called a friend immediately after leaving B.W.'s house, crying and upset, and the friend's stepmother advised her to report the sexual assault. Their testimony corroborated the victim's testimony. Evidence was also presented in the form of electronic conversations between B.W. and the victim right after the assault, where B.W. apologized and expressed remorse for his actions.

**{¶ 17}** The trial court, as trier of fact, considered the demeanor, credibility, and testimony of the witnesses.  Given the evidence presented at trial, we cannot say that this was one of the rare cases where the trier of fact lost its way and created a manifest miscarriage of justice requiring reversal.  The trial court's delinquency finding is supported by the manifest weight of the evidence.

**{¶ 18}** Accordingly, we overrule B.W.'s first assignment of error.

**{¶ 19}** B.W. contends as his second assignment of error that the trial court erred by admitting testimony by an expert witness that a normal exam is consistent with sexual abuse.

**{¶ 20}** The trial court has discretion regarding the admissibility of expert testimony.  "We review the admission of expert testimony for an abuse of discretion." *State v. Svoboda*, 2021-Ohio-4197, ¶ 89 (1st Dist.), citing *State v. Howard*, 2020-Ohio-5072, ¶ 23 (1st Dist.).  The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶ 21}** An expert's opinion does not require particular physical evidence but may rely on the expert's observation of the child's demeanor or other indicia that, based on the expert's training and experience, tend to show that abuse has occurred.  *State v. Britta*, 2010-Ohio-971, ¶ 69 (11th Dist.) (permitting expert testimony based on training and experience, interview and physical exam of child-victim, and behavioral history provided by child's mother).

**{¶ 22}** Testimony which provides support for the truth of facts testified to by the child, or which assists the fact finder in assessing the child's truthfulness, is permitted. *State v. Colonel*, 2023-Ohio-3945 (4th Dist.).  However, expert testimony based on no more than the child's statements is " 'tantamount to permitting the expert to testify as to the child's veracity.' "  *Britta* at ¶ 70, quoting *State v. Johnson*, 2008-Ohio-6657, ¶ 32 (8th Dist.).  The expert witness may not vouch for the credibility of the victim, because credibility matters are to be determined by the magistrate.  The Supreme Court of Ohio has made a distinction between an expert testifying that a child victim is telling the truth and "evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove

that a child *has* been abused." (Emphasis in original.) *State v. Stowers*, 81 Ohio St.3d 260, 262 (1998).

{¶ 23} We have recognized the ability of nurse practitioners to testify as experts regarding medical findings, and to give an opinion as to whether a patient's physical condition is or is not consistent with a history of sexual abuse, and what behaviors are consistent with such abuse. *State v. Smith*, 2004-Ohio-4786 (10th Dist.). Ms. Gail Hornor was a pediatric nurse practitioner who had received specialized training in her field. During her 28 years of employment with the local children's advocacy center, she had performed over 3,000 medical examinations of children who were allegedly the victims of sexual abuse. Ms. Hornor relied, in part, on the forensic interview and social worker notes, before conducting the victim's medical exam.

{¶ 24} Ms. Hornor testified that the results of the victim's physical and genital exam, including testing for trauma and infection, were completely normal, which was not surpising. In Ms. Hornor's experience, normal physical and genital exams are very common outcomes for children that have been sexually abused. Ms. Hornor explained that, by virtue of her experience, a finding of penetration or trauma is less common because the moistness and elasticity facilitates penetration without tearing or trauma. Ms. Hornor opined that less than ten percent of youth who have been sexually abused have identifiable trauma. Therefore, the fact that the examination revealed no finding of injury did not rule out the possibility of penetration or abuse, does not conflict with a disclosure of sexual assault.

{¶ 25} Ms. Hornor opined that the bruise on the neck and bite mark on her breast are indicative of forced sexual activity and is consistent with the victim's narrative. She testified that the medical examination was consistent with the victim's report of a sexual assault. Ms. Hornor's expert opinion was based on her personal observations and findings from the physical examination, specialized knowledge, and experience, and allowed the magistrate to contextualize the victim's accusations in relation to her physical examination. Ms. Hornor did not state that she believed that abuse had occurred, nor did she testify that she believed the victim was telling the truth.

{¶ 26} It is clear from the record that Ms. Hornor relied upon other facts in addition to the victim's statements, and her testimony was given with the proper foundation. *State*

*v. West*, 2008-Ohio-5249 (8th Dist.). Therefore, it was not an abuse of discretion for the trial court to admit her testimony, and B.W. is not entitled to relief.

{¶ 27} B.W.'s second assignment of error is overruled.

{¶ 28} In his third assignment of error, B.W. argues that the trial court erred in not allowing him to testify after the magistrate found him delinquent.

{¶ 29} Juv.R. 40(D)(4)(d) requires a trial court to "undertake an independent review" of objections and permits a trial court to hear additional evidence as part of its consideration. The rule also provides, however, that the trial court "may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." *Id.* We review a trial court's decision not to hear additional evidence for an abuse of discretion. *Blausey v. Blausey*, 2019-Ohio-4506, ¶ 30 (6th Dist.).

{¶ 30} Juv.R. 40(D)(4)(d) governs the procedure a trial court must follow in ruling on objections to a magistrate's decision, and provides, in pertinent part: "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections . . . . Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." "Juv.R. 40 contemplates that new events may arise or be discovered between the time of a magistrate's decision and a trial judge's final judgment, and the rule provides a mechanism for the introduction of such evidence in a timely manner." *In re A.S.*, 2013-Ohio-1975, ¶ 14 (9th Dist.), citing Juv.R. 40(D)(4)(b) and (d).

{¶ 31} In determining whether a party has exercised reasonable diligence, the crux of the analysis is whether the party was put on notice that they would be reasonably expected to introduce the evidence at the hearing before the magistrate. *Johnson-Wooldridge v. Wooldridge*, 2001 Ohio App. LEXIS 3319, *17 (10th Dist. July 26, 2001). Courts have routinely held that when the objecting party demonstrates that, with reasonable diligence, it could not have produced the additional evidence for the magistrate's consideration, the trial court must hold a hearing on the additional evidence. *Id.*

**{¶ 32}** Juv.R. 40 is patterned after Civ.R. 53, and the same principles applied to Civ.R. 53(D) are applicable to Juv.R. 40(D). *In re D.S.R.*, 2012-Ohio-5823 (11th Dist.). Courts have interpreted Civ.R. 53(D)(4)(d), which is identical to Juv.R. 40(D)(4)(d), to permit trial courts to consider "additional evidence" in the form of facts that were not in existence when a case was heard by the magistrate. *Morrison v. Morrison*, 2014-Ohio-2254, ¶ 26 (9th Dist.). " 'Civ.R. 53(D)(4)(d) gives the trial court broad discretion in deciding whether to hear additional evidence.' " *In re Name Change of E.S.*, 2022-Ohio-2107, ¶ 19 (10th Dist.), quoting *Maddox v. Maddox*, 2016-Ohio-2908, ¶ 14 (1st Dist.). Therefore, the trial court is not required to hear additional evidence prior to ruling on objections. *Rankin v. Rankin*, 2021- Ohio-1967 (10th Dist.).

**{¶ 33}** Ohio appellate courts have allowed additional evidence under certain circumstances. *See Knox v. Knox*, 2004-Ohio-428, ¶ 12 (4th Dist.) (finding trial court erred in not considering additional evidence relevant to the appellant's lack of notice of a magistrate's hearing since that information could not have been produced at the hearing). *See also In re S.D.*, 2023-Ohio-1645 (1st Dist.) (trial court erred in not taking additional evidence from an objecting party who did not receive notice of a custody hearing).

**{¶ 34}** If an objecting party does not demonstrate that it could not have produced the new evidence with reasonable diligence, the trial court, in its discretion, may decide not to allow a defendant's testimony when it was not offered during his case in chief. *In re Z.C.*, 2023-Ohio-963, ¶ 28 (2d Dist.).

**{¶ 35}** The choice of which defense to pursue at trial is a matter of trial strategy. *State v. Kinsworthy*, 2014-Ohio-1584, ¶ 43 (12th Dist.), citing *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001). B.W. passed on his opportunity to testify during the hearing. Now, in the light of a negative outcome, B.W. complains the record is incomplete and requests relief pursuant to Civ.R. 40 to correct his decision not to testify. However, Juv.R. 40(D)(4)(d) is not a procedure to avoid the effects of B.W.'s decision not to testify during the hearing. *In re M.L.E*, 2015-Ohio-3647 (11th Dist.).

**{¶ 36}** In this case, B.W. was on notice that his actions were at issue and his testimony was known to him prior to the hearing. We agree with the trial court that B.W.'s testimony did not constitute additional evidence that could not, with reasonable diligence, have been produced during the custody hearing. Therefore, we cannot conclude under

these circumstances that the trial court abused its discretion in denying B.W.'s request to supplement the record.

{¶ 37} Therefore, B.W.'s third assignment of error is overruled.

{¶ 38} B.W.'s objections include claims of ineffective assistance of counsel. He claims in particular that his trial counsel was ineffective because (1) the plea offer was not effectively communicated, (2) the waiver of right to testify was not effectively discussed, and (3) rudimentary investigation was not completed. We decline to address B.W.'s claims at this time. The remedy to present claims of ineffective assistance of counsel such as these is to file a petition for postconviction relief pursuant to R.C. 2953.21(A)(1)(a)(i) which permits the following persons to file a petition for postconviction relief: "Any person who has been convicted of a criminal offense or *adjudicated a delinquent child* and who claims that there was such a denial of infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." (Emphasis added.)

## IV. CONCLUSION

{¶ 39} Having overruled B.W.'s three assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

*Judgment affirmed.*

DORRIAN and BOGGS, JJ., concur.

————————————