JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Augustus Johnson ("defendant"), appeals his convictions in the Court of Common Pleas for kidnapping and gross sexual imposition. For the following reasons, we reverse and remand.
 {¶ 2} On July 14, 2006, defendant was indicted by a Cuyahoga County Grand Jury for 20 counts of rape of a minor in violation of R.C. 2907.02, with sexually violent predator specifications; 20 counts of kidnapping in violation of R.C. 2905.01; and 20 counts of gross sexual imposition in violation of R.C. 2907.05, with sexually violent predator specifications. On October 23, 2007, a jury trial began.[1]
 {¶ 3} At trial, the victim gave the following testimony: She was the stepdaughter of the defendant and was eight years old at the time of trial. She was between the ages of six and seven at the time of the incidents. The incidents first began occurring in March 2005 at the defendant's house on East 222nd Street in Euclid, Ohio. The defendant would watch the victim while her mother worked. While the mother was out of the home, the defendant would undress her and rub his penis against her vagina until he ejaculated. The victim estimated that this occurred about 13 times.[2]
 {¶ 4} In September 2005, the defendant and the victim's mother separated and the defendant moved into a house located at 919 Nathaniel Rd. in Euclid, Ohio. *Page 4 
The defendant continued to watch the victim when the mother went to work. The victim testified that the defendant continued to undress her and rub his penis against her legs and vagina until he ejaculated. The victim estimated that this occurred about 10 times at the Nathaniel address.[3]
 {¶ 5} The State called Patricia Livingstone ("Patricia"), the victim's mother. Patricia testified that she is a resident alien from Liberia and that she married the defendant in 2002. She testified that the defendant watched her daughter while she worked, even after they separated and lived in separate residences. She testified that the victim told her about the sexual abuse on May 17, 2006, and that she drove over to the defendant's house and confronted him. The next day, Patricia made a police report and took the victim to the hospital.
 {¶ 6} The State called Teriea Anderson ("Ms. Anderson"), a social worker with the intake sex abuse unit at Children and Family Services. On May 23, 2006, Ms. Anderson spoke with the victim at her office without her mother present. Ms. Anderson testified that the victim told her that her step-dad "had been touching on her privates"; that the victim pointed to the vaginal area on the anatomical drawing; and the victim told her that the defendant put his private part between her legs and "snot" came out of his "wee-wee." Ms. Anderson testified that she completed a risk assessment form as part of her investigation and made a disposition that "sex abuse was indicated." She did not make a medical referral for the victim. Ms. Anderson *Page 5 
testified that during her interview with the victim, she did not lead or suggest to her and that the victim used her own language when describing the abuse.
 {¶ 7} The State also called Detective Susan Schmid ("Det. Schmid") of the Euclid Police Department. On May 18, 2006, Det. Schmid interviewed the victim and the victim's mother. Det. Schmid testified that she asked the victim open-ended questions and that the victim told her that the defendant would "rub" on her and that "snot" came out of his penis. Following the interview, Det. Schmid made a referral to Child and Family Services and suggested that the victim go to the hospital for a physical examination. On May 22, 2006, Det. Schmid went to defendant's house to arrest him. Det. Schmid testified that defendant waived his rights and denied sexually abusing the victim. Rather, the defendant told Det. Schmid that he merely played a game where he would chase the victim and that he was impotent.
 {¶ 8} The State called Lauren McAliley ("McAliley"), a nurse practitioner at Rainbow Babies and Childrens Hospital, who examined the victim on June 8, 2006. McAliley reported that the medical examinations were normal, which means that she did not find any signs or symptoms suggestive of sexual abuse. She testified that she interviewed the victim and the victim told her that the defendant "molested" her and rubbed her "private parts" with his "wee-wee." She also told McAliley that "slime" came out of the defendant's penis. McAliley's final diagnosis was that she believed that the victim "had been" sexually abused because the victim's disclosure was "compelling."
 {¶ 9} The defense did not present any witnesses. *Page 6 
 {¶ 10} On October 31, 2007, defendant was found guilty of two counts of kidnapping and two counts of gross sexual imposition. He was acquitted of the rape charges.
 {¶ 11} On November 9, 2006, defendant was sentenced to two consecutive terms of 10 years for the gross sexual imposition and kidnapping, for a total term of 20 years in prison.
 {¶ 12} Defendant timely appeals and raises four assignments of error for our review.
 {¶ 13} "I. The trial court erred by permitting expert medical opinion testimony as to the occurrence of sexual abuse absent physical medical evidence as to the alleged sexual conduct."
 {¶ 14} In his first assignment of error, defendant argues that the trial court erred in permitting Nurse McAliley to testify with regard to the credibility of the victim. Defendant argues that her testimony improperly bolstered the victim's testimony. Specifically, defendant points to the following testimony:
 {¶ 15} "Q: In this case what was your conclusion?
 {¶ 16} "A: I found her disclosure to be quite compelling and believe that she had been sexually abused. (Tr. 250.)
 {¶ 17} "***
 {¶ 18} "Q: So would you have made a diagnosis in this particular case, you did it based on her history?
 {¶ 19} "A: Correct. *Page 7 
 {¶ 20} "Q: And her history is just a fancy word for her story, a medical word for her story, right?
 {¶ 21} "A: Correct. (Tr. 257.)
 {¶ 22} "***
 {¶ 23} "Q: Again, your diagnosis in this case is based on what [the victim] told you, correct?
 {¶ 24} "A: What her mother and Detective Schmid told me, yes." (Tr. 272.)
 {¶ 25} In State v. Boston (1989), 46 Ohio St.3d 108, 128, the Ohio Supreme Court held that testimony similar to McAliley's is forbidden on due process grounds. In fact, in three recent cases involving the similar testimony of McAliley, this Court has reversed for a new trial.[4] In Knight, McAliley testified that she took a history from the victim as to the alleged sexual abuse and that the medical examinations she performed were unremarkable, which means that she did not find any signs or symptoms suggestive of physical abuse, sexual abuse, or medical conditions that might provide her with findings of sexual or physical abuse. McAliley explained, however, that these results do not necessarily indicate that sexual abuse has not occurred.
 {¶ 26} In Knight, McAliley testified to a reasonable degree of medical certainty that the victim was sexually abused. McAliley explained that she based her opinion *Page 8 
on the history the victim provided, the medical examination, laboratory results, and information provided by her family and the referring agents. In Knight, this Court held that McAliley's opinion that the child victim had been sexually abused constituted an opinion as to the victim's veracity and was impermissible.
 {¶ 27} In State v. Winterich, McAliley's testimony was once again called into question. In Winterich, McAliley testified that she interviewed the victim and the victim told her that the defendant touched her "down there." As in Knight, McAliley testified that the results of the medical examinations were nonspecific. Nonetheless, McAliley's diagnosis was that the victim had "very possibly" been sexually abused because the victim was "consistent over time" with her disclosure, used her own language, and did not seem "suggestible."
 {¶ 28} In Winterich, this Court held that the State failed to establish a proper foundation for McAliley's opinion that the victim had "very possibly" been sexually abused and that her diagnosis was "nothing more than an opinion on the child's veracity."
 {¶ 29} Finally, in our very recent decision in State v. West, we were once again called to consider the testimony of McAliley. InWest, McAliley again testified that there was no medical indication of sexual abuse but that there was a "good likelihood" that the victim was sexually abused based on the "consistent story" provided to her by the victim as well as the physical and the labs performed.
 {¶ 30} In West, this Court held that McAliley's diagnosis was based solely on her assessment of the victim's veracity and that her testimony served to affirm the *Page 9 
victim's allegations thereby "bolstering [the victim's] credibility in the eyes of the jurors." This Court noted that there is a "difference between an expert who says the victim has been `probably' or `possibly' raped and testimony by the expert that her findings `indicate' rape. Stating that the expert's findings are indicative of rape is not the same as commenting on the victim's veracity. We have historically held that an expert may state her findings and opine that these findings are indicative of rape so as not to cross the bright line of Boston." Statev. West, supra at ¶ 5.
 {¶ 31} In the case before us, McAliley testified that there were no medical findings that the victim had been sexually abused. While a medical expert may make a diagnosis of sexual abuse, despite a lack of physical findings, there must be something more "than the child's unsupported allegations that assisted the expert in arriving at his or her opinion." Winterich, supra at ¶ 24. Here, McAliley based her diagnosis solely on her assessment of the victim's veracity. Indeed, she specifically testified as such when she stated that "I found her disclosure to be quite compelling and believe that she had been sexually abused"[5] and admitted that her diagnosis was based upon the victim's history.[6] As such, McAliley's testimony herein is akin to her testimony in Knight, Winterich and West as it "served to bolster the victim's credibility in the eyes of the jurors." See West, supra at ¶ 7.
 {¶ 32} Cases involving sexual abuse are often "credibility contests" between the victim and the defendant. State v. Burrell (1993),89 Ohio App.3d 737, 746. *Page 10 
Permitting the introduction of an expert's opinion, which relies solely on the child's statements, is tantamount to permitting the expert to testify as to the child's veracity. Id.; State v. Knight, Cuyahoga App. No. 87737, 2006-Ohio-6437; State v. Winterich, Cuyahoga App. No. 89581,2008-Ohio-1813; State v. West, Cuyahoga App. No. 90198, 2008-Ohio-5249. Indeed, since most experts testify as to their experience and the fact that they have seen, interviewed, or treated hundreds or even thousands of child abuse cases, it is very likely that a jury will defer to such an expert opinion on the "believability" of the victim. SeeWinterich, supra at ¶ 23.
 {¶ 33} Here, we find that defendant did not receive a fair trial when McAliley was permitted to testify as to the victim's veracity without laying a proper foundation for her opinion. As the Supreme Court inBoston, supra, noted, "the admission of [such] testimony was not only improper-it was egregious, prejudicial, and constitutes reversible error." Boston, supra, at 125.
 {¶ 34} Assignment of Error I is sustained.
 {¶ 35} "II. The trial court erred by excluding relevant testimony of the alleged victim's mother's immigration status.
 {¶ 36} "III. The trial court erred by sentencing appellant, Augustus Johnson, to two ten-year prison terms for gross sexual imposition and kidnapping because these offenses were allied offenses of similar import, which results in the kidnapping *Page 11 
convictions being merged into the gross sexual imposition convictions thereby limiting the maximum prison term to be imposed to two five-year sentences.
 {¶ 37} "IV. The trial court erred by permitting hearsay testimony describing sexual acts performed on the alleged victim."
 {¶ 38} Based on this disposition, defendant's remaining assignments of error are rendered moot. See App. R. 12(A)(1)(c).
Judgment reversed and remanded.
It is ordered that appellant recover from appellee his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] Prior to calling its second witness, the State dismissed all but six counts of the 60-count indictment to include two counts of rape, two counts of kidnapping and two counts of gross sexual imposition.
[2] The victim testified that it occurred "like 13" times, but was unsure of the exact number. (Tr. 533.)
[3] The victim testified that it occurred "about 10" times, but was unsure of the exact number. (Tr. 542.)
[4] State v. Knight, Cuyahoga App. No. 87737, 2006-Ohio-6437;State v. Winterich, Cuyahoga App. No. 89581, 2008-Ohio-1813; State v.West, Cuyahoga App. No. 90198, 2008-Ohio-5249.
[5] Tr. 250.
[6] Tr. 257, 272. *Page 1