[Cite as *In re R.E.A.*, 2014-Ohio-110.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99652

---

## IN RE: R.E.A., JR.
## A Minor Child

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 11110371

**BEFORE:**   Blackmon, J., S. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   January 16, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

By: Erika B. Cunliffe
Assistant Public Defender
Courthouse Square Suite 200
310 Lakeside Avenue
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Gregory Paul
Assistant Prosecuting Attorney
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant R.E.A., Jr. ("R.A.") appeals the juvenile court's finding him delinquent for an act that if committed by an adult would be rape. He assigns the following three errors for our review:

> I. Evidence of venue was insufficient to support R.A.'s delinquency adjudication for rape.

> II. The court's delinquency finding on a single count of rape alleged in count one is contrary to the weight of the evidence presented.

> III. Numerous lapses by R.A.'s trial counsel compromised the effectiveness of the legal assistance of counsel provided and contravened the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Ohio Constitution.

{¶2} Having reviewed the record and pertinent law, we reverse and remand for a new trial. The apposite facts follow.

## Facts

{¶3} On June 8, 2011, a complaint was filed against R.A. for offenses that would constitute four counts of rape and four counts of gross sexual imposition if committed by an adult. Each of the counts involved R.A.'s then four-year old cousin, S.L.

{¶4} At the time of the adjudicatory hearing, S.L. was eight-years old. The mother of S.L. testified that S.L. had been acting out during the summer of 2008 when S.L. was four years old. She said S.L. was easy to anger and would cry over minor things, which was not normal behavior for her. The mother repeatedly asked the child what was wrong. However, it was not until March of 2009 that the child told the mother that her cousin had molested her. The mother did not take the child to University

Hospitals until several days after the child had told her about the molestation. The hospital called the police.

{¶5} Dr. Mark Feingold testified that he is a pediatrician at MetroHealth Hospital where he is the Director of Child Protective Services. He stated that Cuyahoga County Department of Children and Family Services ("CCDFS") referred S.L. to him and that he saw her two months after University Hospitals had examined her. He said the purpose of his interviewing S.L. was for medical diagnosis so that the child was properly treated, including psychotherapy.

{¶6} S.L. told Dr. Feingold that her cousin had touched her in a sexual manner on at least four occasions. She stated that he had touched her genitals, buttocks and anal areas with his hands, put his penis in her "butt," and forced her to perform oral sex on him. The doctor's physical examination revealed no signs of sexual abuse.

{¶7} According to Dr. Feingold, S.L. told him that after her cousin had touched her it hurt to urinate. Dr. Feingold explained that sometimes rubbing of the genitals creates friction, which would cause painful urination. According to the doctor, this would not be something a young child would know about. He also stated that her disclosures were consistent with children that had been abused in that she gave a clear history and did not contradict herself. He concluded from a medical standpoint that she was a victim of sexual abuse. He referred S.L. for psychiatric counseling.

{¶8} S.L. testified that she was currently eight years old. She recalled only one incident of sexual abuse. She claimed her cousin picked her up and started rocking her

and put her in the bathtub. He then took out his penis and tried to shove it into her mouth. She said his penis was only in her month "for about a second." She claimed this happened at her aunt's house during the summertime when she was six or seven years old. When the court explained to her what grade she would have been in when six or seven years old, S.L. corrected herself and said it happened three years ago.

{¶9} The trial court found R.A. delinquent of one count of rape. The remaining counts were dismissed. After the dispositional hearing was conducted, the trial court sentenced R.A. to community control and referred him for sex offender treatment or counseling. The court declined to classify R.A. as a juvenile sex offender.

### Venue

{¶10} In his first assigned error, R.A. argues that the state failed to prove that the sexual act occurred in Cuyahoga County. Specifically, R.A. argues that at trial, the state never elicited testimony or presented evidence that the acts occurred in Cuyahoga County.

{¶11} "A conviction may not be had in a criminal case where the proof fails to show that the crime alleged in the indictment occurred in the county where the indictment was returned." *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus. "[I]t is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Headley*, 6 Ohio St.3d 475, 453 N.E.2d 716, citing *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus.

{¶12} R.A. moved for an acquittal at the end of the state's case based on the state's failure to prove the crime occurred in Cuyahoga County. Our review of the record shows that the victim stated that the crime occurred at her aunt's house. The mother testified that the aunt lived in "Maple." Although the mother failed to state "Maple Heights," the surrounding circumstances indicate that is the only possibility. When describing her relationship with her aunt, the mother stated that when they lived on Belvidere, she did not think the Cleveland neighborhood was safe for the children to play. She stated as follows:

> I would drive, my husband and I, up in the suburbs just for them to play because it's safer to me. We would go around to Garfield Heights Park, Maple Heights Park. Then my aunt lived in Maple. So sometimes if she wasn't busy, we would stop by or what not; or sometimes we would just go over and enjoy each other's company, and she would do the same.

Tr. 16-17.

{¶13} This testimony shows that the aunt lived in the suburb of Maple Heights because the mother testified they would travel to parks in the suburb of Cleveland, including Maple Heights Park. After stating this, she stated that her aunt lived in "Maple." There is no other suburb besides Maple Heights that is within a short driving distance from Cleveland with the name Maple in it. Maple Heights is located in Cuyahoga County.

{¶14} The child also testified that she, herself, currently lived in "Maple" without stating Maple Heights, while the mother on direct examination testified that they currently lived in Maple Heights. Therefore, "Maple" seems to be the shorthand way this family

refs to Maple Heights. This along with the fact that Cuyahoga County Family and Children Services was assigned the case and the child was examined at MetroHealth provide circumstantial evidence of venue. Therefore, the trial court properly denied R.A.'s motion to acquit based on lack of venue. Accordingly, R.A.'s first assigned error is overruled.

### Ineffective Assistance of Counsel

{¶15} We address R.A.'s third assigned error out of order because we conclude it is dispositive of his appeal. R.A. argues that counsel was ineffective for failing to challenge the introduction of the opinion testimony by Dr. Feingold, who concluded that S.L.'s allegations were credible.

{¶16} To establish a claim for ineffective assistance of counsel, R.A. must show that his counsel's performance was deficient and that deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Under *Strickland*, our scrutiny of an attorney's work must be highly deferential, and we must indulge "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 688.

{¶17} In *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989), the Ohio Supreme Court held that "[a]n expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision and is, therefore, admissible pursuant to Evid.R. 702 and 704." *Id.* at 129. However, despite the admissibility of

such evidence, "an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* When a trial court permits an expert to render an opinion as to the victim's veracity, "the admission of this testimony [is] not only improper — it [is] egregious, prejudicial and constitutes reversible error." *Id.* at 128. The court reasoned that such an opinion constitutes a litmus test of the victim's credibility, which infringes upon the factfinder's responsibility to make their own assessment of the veracity of witnesses. *Id.* at 129, relying upon *State v. Eastham*, 29 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).

{¶18} In *Boston*, the expert relied on the medical examination of the victim, statements made by the victim, and the child's medical history in concluding that the child was sexually abused. *Id.* at 128. However, the expert also had physical evidence that the child was abused to support his conclusion because the medical examination indicated "probable vaginal penetration and possible rectal penetration." *Id.*

{¶19} In the instant matter, Dr. Feingold's opinion was as follows:

Q. Doctor, the disclosures that [S.L.] made to you are they consistent in your opinion with children who have been sexually abused?

A. Yes.

Q. Why is that?

A. She was able to give me a clear history. She didn't contradict herself. She gave descriptions of the alleged perpetrator, his genitals, that were of a nature that I wouldn't think a 5-year-old would be — Well, I take that back. She said that the perpetrator's penis had a red tip and then she went on to say that it was like her brother's, I think. She gave this unusual history of urinary discomfort after some type of touching or rubbing against her

genitals. It was consistent with what she had told the interviewers at Children and Family Services.

I think putting that all together, and for [her] age, which in my experience is fairly persuasive. I'm not sure how much I trust teenagers. Sometimes they deliberately will make up stories. But in my experience in pediatrics I don't find 4-year-old and 5-year-old children doing that.

Q. Doctor, did you draw any conclusions upon completing your interview with her?

A. I concluded from a medical stand point of view that she had been the victim of the sexual abuse or sexual molestation. My examination was normal, so I was able to reassure her mother and myself about that. Her laboratory test were fine. There was no evidence of gonorrhea and chlamydia, which is good.

Tr. 55-56.

{¶20} Thus, the doctor's opinion that S.L. was sexually abused was based upon the child's statements and information provided by family and referring agents. However, unlike in *Boston*, there was no physical medical evidence to support the doctor's conclusion that S.L. was abused. The medical examination was unremarkable.

{¶21} Dr. Feingold testified that he conducted a 20-minute interview with S.L. In concluding that S.L. had been sexually abused, he relied on the fact that her disclosures were consistent with children who had been sexually abused in that she gave a clear history and did not contradict herself; statements were consistent with what she told CCDCFS; and believed that four or five-year olds do not make up stories about sex abuse. None of these statements provide evidence of sex abuse independent of R.A.'s statements. Although the mother had told the doctor that S.L. had also been "acting out" the doctor conceded that "acting out" is also something children that are not abused do.

**{¶22}** R.A. did tell the doctor that it hurt to urinate after R.A. had abused her. However, there was also evidence that she had experienced painful urination due to the overuse of soap. There was no irritation when the doctor examined her. Moreover, the only incident S.L. testified to at the adjudicatory hearing was that R.A. had forced her to perform oral sex, which would not cause painful urination.

**{¶23}** Thus, Dr. Feingold's opinion that, "from a medical point of view," S.L. was sexually abused was based solely upon the child's statements. The information provided to him by her family and referring agents also relied solely upon S.L.'s statements. Courts require some evidence, independent of the child's statements, to support an opinion that the child was abused. *State v. West*, 8th Dist. Cuyahoga No. 90198, 2008-Ohio-5249; *State v. Winterich*, 8th Dist. Cuyahoga No. 89581, 2008-Ohio-1813; *State v. Knight*, 8th Dist. Cuyahoga No. 87737, 2008-Ohio-5437.

**{¶24}** Because there was no evidence of sex abuse independent of S.L.'s statements, counsel should have objected to the admission of the doctor's testimony. Counsel did object to the doctor's testimony as hearsay, but offered no objection when the doctor offered his opinion testimony. Counsel's failure to do so was prejudicial to R.A.'s defense because the entire case hinged on S.L.'s credibility. There was no eyewitness testimony or physical evidence of the abuse. Accordingly, we sustain R.A.'s third assigned error and reverse and remand the matter for a new trial.

**{¶25}** In doing so, we note that it is troublesome that the alleged act occurred during the summer of 2008, when the victim was four-and-a-half years old, but the trial

was not conducted until four years later when the victim was eight years old. This time span most assuredly impacted the child's ability to recollect the alleged incident. Upon remand, if a new trial is pursued, the child will be approximately 11 years old, further hindering her recollection regarding an incident that occurred approximately six years before. We suggest that the prosecutor take this into consideration when deciding how to proceed.

{¶26} Judgment reversed and remanded for a new trial.

It is ordered that appellant recover from appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS
IN JUDGMENT ONLY