[Cite as *In re M.L.E.*, 2015-Ohio-3647.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: | : | **O P I N I O N** |
| M.L.E. and C.I.E., | | |
| NEGLECTED/ABUSED/ | : | |
| DEPENDENT CHILDREN | | **CASE NOS. 2015-P-0007,** |
| | : | **2015-P-0010,** |
| J.T.E., A.C.E., N.C.E., | | **2015-P-0011,** |
| H.J.E., L.M.E., J.R.E., | : | **2015-P-0012,** |
| NEGLECTED/DEPENDENT | | **2015-P-0013,** |
| CHILDREN | : | **2015-P-0014,** |
| | | **2015-P-0015,** |
| | : | **and 2015-P-0016** |

Appeals from the Portage County Court of Common Pleas, Juvenile Division, Case Nos. 2014 JCC 00619, 2014 JCC 00620, 2014 JCC 00621, 2014 JCC 00622, 2014 JCC 00623, 2014 JCC 00624, 2014 JCC 00625, and 2014 JCC 00626.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Brandon J. Wheeler*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Portage County Department of Job and Family Services).

*William T. Whitaker* and *Andrea Whitaker*, 54 East Mill Street, Suite 301, Akron, OH 44308 (For Appellants).

*Gerrit M. Denheijer,* Guilitto Law Office, L.L.P., 222 West Main Street, P.O. Box 350, Ravenna, OH 44255 (Guardian ad litem).

THOMAS R. WRIGHT, J.

{¶1} These consolidated appeals are from judgments in eight juvenile

proceedings before the Portage County Court of Common Pleas. In each judgment, the trial court upheld the magistrate's conclusion that all of the subject children should remain in the temporary custody of appellee, the Portage County Department of Jobs and Family Services, because each child was either a neglected and dependent child, or an abused child. Appellants, Jessica M. and James T. Earley, primarily assert that all eight judgments must be reversed because the magistrate's underlying findings are not supported by the evidence. For the following reasons, we affirm.

{¶2}    Appellants own and maintain a small farm in Brimfield Township, Portage County, Ohio. As of July 2014, they lived in a two-story home on the farm with eight of their nine children. In conjunction with the maintenance of the farm, appellants harbor a number of animals, including dogs, cats, and at least one goose. Some of the animals are permitted to enter the home and sleep with the children.

{¶3}    The ages of the eight children range from fifteen years old, M.L.E., to one year, C.I.E. Three of the children have conditions requiring some form of medical treatment. M.L.E. has a history of depression often causing her to engage in violent behavior against her siblings. M.L.E. also has suicidal tendencies and has been prescribed specific medication. N.C.E has been diagnosed as autistic and needs specialized educational services. J.R.E. has been diagnosed with ADHD.

{¶4}    On the morning of July 27, 2014, M.L.E. became involved in an altercation with her younger brother, J.T.E. This altercation led to a confrontation between M.L.E. and James T. Earley, her father. During the confrontation, M.L.E. sustained at least one blow to her head. As a result, M.L.E. called 9-1-1 on her cellphone, and Officer Crystal Casterlin of the Brimfield Police Department was dispatched to appellants' home, along

2

with the emergency squad.

{¶5} Upon exiting her cruiser, Officer Casterlin initially spoke to the father in the driveway regarding the basis for his daughter's 9-1-1 call. According to the officer, the father appeared to be intoxicated. When Officer Casterlin asked whether he had been drinking, the father replied that "it was from the night before." The officer then asked if one of the children had been injured that morning. In response, the father indicated that it was possible M.L.E may have been hit by his bedroom door as he was closing it after the altercation between her and J.T.E. ended.

{¶6} Officer Casterlin was able to locate M.L.E. in the basement of the Earley residence. After M.L.E. gave a brief description of the underlying incident involving her father, the officer asked her if she had any evidence of an actual injury to her head. The officer was then taken to the basement bathroom, where M.L.E. showed her a piece of "wadded-up" toilet paper that was sitting inside the toilet bowl. According to the officer, there was fresh blood on the paper.

{¶7} While investigating M.L.E.'s complaint against her father, Officer Casterlin had the opportunity to observe the other seven children. According to her, none of the children were clean, despite the fact that she did not arrive at the Earley residence until approximately 11:45 a.m. In regard to appellants' youngest child, C.I.E., the officer saw that the child's diaper was so full that it was hanging around her knees. The officer also noted that C.I.E. had a substantial injury to her right foot that caused her to walk on the outside edge of the foot.

{¶8} In addition, Officer Casterlin was able to observe the general condition of the inside of the home. The officer gave the following summary regarding the home's

3

condition:

{¶9} "It was deplorable. Um, the home was absolutely filthy. The floor had, um, feces on it, urine. The couch had, um, you know how if you put something on upholstery on something with a liquid it will dry up and you can see the fabric. The entire couch was like that from the bottom where you could see that it had drawn up like moisture. It smelled like urine. The smell was like animal feces and urine and was unbearable. There were flies all throughout the house. Um, every room was filthy. The walls were filthy. Holes in the wall. The beds didn't have, um, coverings on them. The mattresses were filthy. There was like a wild goose in one (1) of the rooms that was in a dog, what appeared to be a smaller dog cage. Um, the entire bottom of it was covered in, um, goose feces, urine that had leaked out onto the floor in the little boy's room. His bed was right next to the goose cage and it had all spilled out onto the floor around it. Um, there were animals everywhere. The door was open, um, and the like the animals just walked in and out. But there were dishes piled up in the sink, um, that appeared to have some old food on them and bugs crawling in them. I mean every room was just absolutely filthy."

{¶10} Based upon her observations of the eight children and the Earley home, Officer Casterlin immediately took temporary custody of the children so that they could be transported to the Akron Children's Hospital for examination by Dr. Adarsh Gupta, a specialist in pediatric emergency medicine. In relation to C.I.E., the doctor found three splinters near the heel of her right foot. The doctor also found a dark spot on the bottom of the foot, where a blister had formed. According to Dr. Gupta, upon lancing the blister, he determined that the foot was infected, but could not locate the specific splinter which

led to the blister. The doctor concluded that the wound had never been treated before, and that the splinter was inside the child's foot for so long that her body had dissolved the foreign object.

{¶11} In examining M.L.E., Dr. Gupta could not find any physical indication that she was hit in the face/head. However, during an interview with a social worker at the hospital, M.L.E. gave a lengthy description of the alleged confrontation with her father. According to M.L.E., she and her younger brother, J.T.E, were arguing in their parents' bedroom when she pushed him onto their bed. Upon witnessing this, the father hit her in the back multiple times with his fist. Once M.L.E. turned around to face her father, he slapped her three times on her face with his open hand, thereby giving her a bloody nose. After running from the room, M.L.E. called 9-1-1 on a cellphone.

{¶12} One day following the removal of the children from appellants' residence, appellee filed eight separate complaints for temporary custody. As to all eight children, the complaints asserted that they were abused, neglected and dependent children. The same day the complaints were filed, the court magistrate held a shelter-care hearing, in which appellants stipulated that reasonable grounds for removing the children existed. Thus, the magistrate found that removal of the children had been in their best interests, and issued an interim order granting temporary pre-dispositional custody to appellee.

{¶13} The final adjudicatory hearing on the complaints was held before the court magistrate in September 2014. In addition to Officer Casterlin and Dr. Gupta, appellee also introduced the testimony of Pamela Huzvar, a social worker who was assigned to this case the same day of the children's removal. Huzvar's testimony focused upon the condition of the children and appellants' home immediately following their removal. As

5

to the confrontation between M.L.E. and her father, the magistrate did not allow Officer Casterlin to testify regarding the statements M.L.E. made when the officer first arrived at the home. However, the magistrate accepted into evidence a copy of M.L.E.'s medical records from the Akron hospital. These records contained a summary of the statements the child made concerning the altercation to the hospital social worker.

{¶14} Neither appellant testified at the adjudicatory hearing. Instead, appellants presented the testimony of four individuals who had seen the children and the home in the weeks prior to the children's removal. Two of these witnesses were employees of a different county agency which had been providing assistance to appellants in relation to the treatment of M.L.E. and J.R.E. Through this testimony, appellants tried to establish two basic points: (1) the condition of both the children and the home on the day of their removal was not typical; and (2) any problems with the home's condition was primarily attributable to M.L.E., who had a tendency, due to her psychological problems, to throw temper tantrums and cause messes inside the home.

{¶15} In his ensuing decision, the magistrate dismissed the allegations of abuse as to six of the children. Regarding M.L.E. and C.I.E., though, the magistrate found that they were abused children. The magistrate further found that the allegations of neglect and dependency were proven as to each of the children. As to the dependency finding, the decision specifically cited the "deplorable" condition of the home as a danger to the children's well being. Accordingly, the magistrate recommended that all eight children remain in the temporary custody of appellee.

{¶16} During the evidentiary hearing, the parents/appellants were represented by separate counsel. However, following the issuance of the magistrate's decision, they

6

hired a new attorney to represent both of their interests in the case. After filing a notice of appearance, new counsel submitted objections on their behalf, expressly contesting many of the factual issues that had been raised during the hearing. In conjunction with the objections, new counsel also requested the trial court to allow appellants to submit additional evidence. New counsel asserted that appellants had gathered a significant amount of evidence in their favor before the evidentiary hearing, but their prior attorneys did not have sufficient time to review it and decide what to present. New counsel further asserted that both appellants wanted to testify at the hearing, but were advised not to as a result of pending criminal charges for child endangerment.

{¶17} An oral hearing on appellants' objections was held in December 2014. At the outset of the proceeding, the trial court ruled that appellants would not be permitted to present additional evidence. New counsel then requested an opportunity to make a proffer regarding the substance of the additional evidence and why it was not presented during the evidentiary hearing before the magistrate. Even though the trial court did not allow the proffer to be made during the objections hearing, counsel was granted leave to submit a written proffer prior to the issuance of the court's determination.

{¶18} In its final judgment, the trial court overruled appellants' objections to the magistrate's decision, expressly concluding that the transcript of the evidentiary hearing had sufficient evidence to support the findings that M.L.E. and C.I.E. were abused, and that all eight children were neglected and dependent. The trial court also held that there was nothing in the record to indicate that appellants were denied the opportunity at the evidentiary hearing to present any evidence in their favor. As a result, the court continued appellee's temporary custody of the eight children.

7

{¶19} In appealing the adjudicatory ruling as to each child, appellants assert two assignments for review:

{¶20} "[1.] The magistrate erred by making the determination that [appellee] presented clear and convincing evidence that two of the Earley children were abused and that all of the Earley children were neglected and dependent and it was error for the trial court to adopt the magistrate's decision.

{¶21} "[2.] The trial court erred as a matter of law and abused its discretion in denying the Earleys the opportunity under Juv.R. 40(D)(4)(d) to produce additional evidence at the hearing on the objections to the magistrate's decision since the Earleys were unable to with reasonable diligence produce the evidence at the magistrate's hearing."

{¶22} Under their first assignment, appellants submit that appellee failed to carry its burden of establishing a proper legal justification for the decision to remove the eight children from the home. In essence, they argue that the magistrate's findings of abuse, neglect, and dependency were either not supported by sufficient evidence or against the manifest weight of the evidence. In challenging appellee's evidence, appellants often refer to the additional evidence they would have introduced if the trial court had granted their request to hear the new evidence. However, in deciding whether the magistrate's findings were supported by the evidence, the scope of our review must be limited to the transcript of the evidentiary hearing.

{¶23} For purposes of the adjudicatory hearing, the family services agency has the burden of proving, by clear and convincing evidence, that the subject child had been abused, neglected or dependent. *In re T.M.W.*, 11th Dist. Portage No. 2010-P-0085,

8

2011-Ohio-4303, ¶10. "'Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.'" *In re C.D.D. and H.G.D.*, 11th Dist. Portage Nos. 2011-P-0065 and 2011-P-0066, 2012-Ohio-3302, ¶21, quoting *In re Krems*, 11th Dist. Geauga No. 2003-G-2535, 2004-Ohio-2449, ¶36.

{¶24} As to the role of an appellate court in reviewing a juvenile court's findings of abuse, neglect, or dependency, this court has stated:

{¶25} "In juvenile proceedings, we apply the criminal standard for reviewing manifest weight challenges. Cf. *In re Corey*, 11th Dist. No. 2005-G-2649, 2006-Ohio-2013, at ¶17. Under this standard, when reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, * * *; see, also, *State v. Thompkins*, 78 Ohio St.3d 380, 387, * * *.

{¶26} "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' *Martin*, supra, at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. *Thompkins*, supra, at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to

9

be given the evidence and the credibility of the witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, * * *, at paragraph one of the syllabus. Indeed, '[o]nce the clear and convincing standard has been met to the satisfaction of the [juvenile] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.' *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, * * *." *In re Savchuk*, 180 Ohio App.3d 349, 2008-Ohio-6877, ¶28-29 (11th Dist.2008).

**{¶27}** As noted above, in relation to each of the eight children in this case, the court magistrate first concluded that the children were both neglected and dependent. These conclusions were based upon the magistrate's underlying factual finding that the condition of the children and appellants' home had been "deplorable" on the day that Officer Casterlin and Social Worker Huzvar made their observations. In contesting the magistrate's finding, appellants maintain that the Casterlin and Huzvar testimony was not entitled to significant weight because they only saw the home on one particular day. They contend that greater weight should have been given to the testimony of their four witnesses, which demonstrated that, during the weeks prior to July 27, 2014, the home had been properly kept and the children were generally clean. Appellant further assert that, given that they lived on a farm, had eight children, and had a low income, it is not surprising that their residence was a little dirty on a specific day.

**{¶28}** The flaw in appellants' argument is that, if believed, appellee's evidence was readily sufficient to show that the home and the children were more than a little dirty. In addition to the testimony of Casterlin, Huzvar, and Dr. Gupta, appellee also introduced into evidence twenty photographs of the home, taken on the day of the

10

removal. When viewed as a whole, this evidence readily established that the extent of the filth/dirt in the home was not such that it could have accumulated over one or two days. Instead, the evidence showed that the condition of the home had been neglected over a substantial period of time. Moreover, regarding the children, Dr. Gupta testified that, in examining J.R.E., he noticed that the child was filthy, and that the dirt on him was not fresh, but old and dry.

{¶29} As previously stated, as part of their evidentiary submission, appellants presented the testimony of two employees from a different county agency that had been providing assistance to the Earley family prior to the date of the removal. Both of these witnesses stated that, whenever they visited the home, they did not find any unsanitary conditions in the home. However, the magistrate could have justifiably concluded that this evidence only showed that when appellants were aware that county officials might be visiting their home in the near future, they took the required steps to make the home and the children presentable. Furthermore, when shown the photographs of the home taken on the date of the removal, one of the employees agreed that the condition of the home was not appropriate for children.

{¶30} Based upon the testimony of Officer Casterlin and Social Worker Huzvar, they observed the following problems in the home: (1) each room in the home was filthy and smelled like urine and feces; (2) there were flies throughout the structure; (3) one of the children's bedrooms contained a caged goose; (4) the bottom of the goose's cage was overflowing with feces; (5) the entire kitchen counter was covered with dirty dishes, and there were bugs crawling around the dishes; (6) all of the children's mattresses and box springs were stained and smelled; (7) to the extent that there were any linens upon

11

the mattresses, the linens were dirty; (8) the entire basement of the home was covered with dirty clothes and trash; and (9) there was a box of rotting produce at the foot of the basement stairs. As to the children, Huzvar testified that, at the time they were initially taken into custody, they smelled, were wearing dirty and stained clothes, and some did not have shoes.

{¶31} As to the odor in the home, appellants argue that the evidence supported the finding that the odor was limited to the room containing the caged goose. They also assert that their additional evidence would have demonstrated that the goose was only bought into the house that day because the bird was frightened by the police cars. But, as part of their respective testimony, Casterlin and Huzvar stated that the smell of urine and feces permeated the entire structure. Such an odor would not have been created by the momentary presence of a single animal.

{¶32} Appellants further maintain that the ultimate findings of dependency and neglect were not warranted because there was no direct evidence that the home posed an imminent threat to the children's health and well being. However, given the extent of the unsanitary conditions in the home, no expert testimony was needed. A lay person would not need expert guidance to determine that a child's health could be adversely affected by constantly living in such conditions.

{¶33} R.C. 2151.04(C) provides that a child can be deemed dependent when the child's "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." Pursuant to R.C. 2151.03(A)(2), a child is considered neglected when, due to faults or habits of the parents, there is an absence of adequate parental care. A finding of neglect can also be made when a parent

12

"refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being." R.C. 2151.03(A)(3).

{¶34} In light of the testimony of Officer Casterlin, Social Worker Huzvar, and Dr. Gupta, the magistrate did not lose his way in ultimately finding that each of the eight children was both neglected and dependent. The record demonstrates there was clear and convincing evidence showing that appellants were not providing an adequate home or environment to properly ensure the children's health and physical safety. Moreover, the evidence established that appellants were not providing adequate parental care as to the children's day-to-day needs, such as proper clothing and proper grooming. For this reason, the trial court did not err in overruling appellants' objections as to the findings of neglect and dependency.

{¶35} Regarding the distinct findings of abuse, appellants have raised separate arguments as to each of the alleged victims. First, in relation to M.L.E., they assert that appellee did not present clear and convincing evidence that her father assaulted her. In support, they submit that there was some evidence indicating that any physical contact between M.L.E. and her father occurred solely because he was attempting to pull her away from her brother. They further emphasize that Dr. Gupta did not find any physical indication that she sustained an injury to her head.

{¶36} As previously indicated, a copy of M.L.E.'s medical records from the Akron hospital was introduced into evidence. The records contain a summary of the statement M.L.E. gave to a hospital social worker concerning the altercation between her and her father. According to her, after striking her a number of times on her back, her father

13

slapped her three times across the face with an open hand. She further stated that she suffered a nose bleed as a result of the slaps.

{¶37} Although Dr. Gupta could not find any signs of trauma on M.L.E.'s face during his examination, he also testified that the lack of any physical signs did not mean that she was not hit across the face. Furthermore, there was some evidence corroborating M.L.E.'s statement concerning the physical injury to her face. Officer Casterlin testified on cross-examination that when she asked M.L.E. for evidence that she had a nose bleed, M.L.E. took her to the basement toilet, where the officer could see a wad of toilet paper that appeared to have blood on it.

{¶38} In relation to M.L.E., appellants also point to the fact that she had a history of violent behavior, and that she had just pushed her younger brother down when her father confronted her. However, if M.L.E.'s statement as to the nature of the altercation between her and her father is believed, the extent of the force the father employed to stop her was clearly excessive.

{¶39} Pursuant to R.C. 2151.031(C), a finding of abuse can be made if there is evidence of a physical injury that was inflicted "other than be accidental means, * * *.' Again, if believed, Officer Casterlin's testimony and M.L.E.'s statement in the submitted medical records constitute clear and convincing evidence that the father purposely hit her in the face three times, causing a physical injury to her nose. Hence, the finding of abuse as to M.L.E. was not against the manifest weight of the evidence.

{¶40} As to C.I.E., appellants assert that there was no evidence that she was in pain as a result of the blister on her right foot. They emphasize that Dr. Gupta admitted at trial that he never asked C.I.E to walk on the foot as part of his examination. As part

14

of his testimony, though, the doctor stated that he knew C.I.E. was in pain because she would draw back her foot every time he tried to touch it. In addition, Officer Casterlin stated that she knew the injury to the right foot was serious because C.I.E. was walking on the outside edge of the foot.

{¶41} During his testimony, Dr. Gupta indicated that, since he could not find an object in the foot when he opened the blister, he concluded that C.I.E. had the injury for a number of weeks prior to her hospital visit. Based upon this, the trier of fact could find that appellants had failed to take the necessary steps to remove the splinter and ensure that the foot would heal properly. As to this point, Officer Casterlin testified that when she asked the mother about the injury, she admitted that she had been aware of C.I.E.'s problem for at least two weeks, but had decided not to take the child to a doctor.

{¶42} Pursuant to R.C. 2151.031(D), a finding of abuse can be made if, due to acts of her parents, a child "suffers physical or mental injury that harms or threatens to harm the child's health or welfare." In relation to C.I.E., the record contains clear and convincing evidence that appellants delayed in obtaining proper medical treatment for the child, despite the fact that a blister had formed on the foot and the child was having trouble walking. Plus, Dr. Gupta testified that the infection in C.I.E.'s foot would have continued to grow if she had not been brought to the hospital. Accordingly, the magistrate did not lose his way in finding that C.I.E. was an abused child.

{¶43} Consistent with the foregoing analysis, appellants have failed to show that the magistrate's findings of abuse, neglect, and dependency were against the manifest weight of the evidence. Therefore, as the trial court did not err in overruling appellants' objections and adopting the magistrate's findings, their first assignment lacks merit.

15

**{¶44}** Under their second assignment, appellants contest the trial court's refusal to allow them to present additional evidence in conjunction with their objections to the magistrate's decision. Appellants argue that, since they acted with reasonable diligence to collect the additional evidence prior to the evidentiary hearing before the magistrate, the trial court abused its discretion in not permitting them to submit it for consideration.

**{¶45}** Juv.R. 40(D)(4)(d) governs the procedure a trial court must follow in ruling upon objections to a magistrate's decision, and provides, in pertinent part:

**{¶46}** "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. * * * Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."

**{¶47}** As to the second sentence of the quote, appellants appear to interpret the sentence to mean that, so long as they had collected the evidence and were prepared to present it at the hearing before the magistrate, the trial court cannot refuse to hear the additional evidence. However, this interpretation conflicts with the plain language of Juv.R. 40(D)(4)(d). That is, the rule readily states that, unless the objecting party can show that the additional evidence *was not producible*, even with reasonable diligence, prior to the magistrate's hearing, the trial court can refuse to hear it. To this extent, the court is only obligated to hear the additional evidence when it could not be discovered prior to the magistrate's hearing.

**{¶48}** In requesting the trial court to hear their additional evidence in this case, appellants readily admitted that they had accumulated the evidence in question prior to

16

the magistrate's evidentiary hearing, but their original counsel chose not to introduce it. Thus, appellants were attempting to use the "additional evidence" procedure as a way of avoiding the effects of their original counsel's decision. The plain language of Juv.R. 40(D)(4)(d) does not indicate that rule was intended to be used for this purpose.

**{¶49}** Given that appellants were not seeking to present new evidence that was not discovered until after the magistrate's evidentiary hearing, the trial court acted within the scope of its sound discretion in refusing to hear the additional evidence. Therefore, appellants' second assignment is also without merit.

**{¶50}** The judgment of the juvenile court is affirmed.

CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in judgment only with a Concurring Opinion.

**{¶51}** I concur with the majority to affirm the judgment of the juvenile court. I write separately to note two points.

**{¶52}** First, this matter involves abuse, neglect, and/or dependency with respect to all eight children. A child who is subject to a juvenile court proceeding is a party to that proceeding. *See In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶29. As such, a "child is a party whose due process rights are entitled to protection." *Id.* at ¶28. All persons, including children, have a constitutional right under the Fourth Amendment

17

to be safe and secure in their own home. *See generally In re Spicuzza*, 11th Dist. Lake Nos. 2007-L-121, 2007-L-126, 2007-L-145, and 2007-L-146, 2008-Ohio-527, ¶46; *In re S.K.*, 2d Dist. Clark No. 2009 CA 26, 2009-Ohio-3954, ¶58. The safety and welfare of the child is of paramount concern. *See Spicuzza*, *supra*, at ¶46; *Sheridan v. Sheridan*, 6th Dist. Williams No. WM-04-010, 2005-Ohio-6007, ¶28.

{¶53} Clearly, the record reveals the home environment in this case was not safe and secure. Thus, I agree with the majority that appellants have failed to show that the magistrate's findings of abuse, neglect, and/or dependency with respect to all eight children were against the manifest weight of the evidence. *See* R.C. 2151.031(D) (abuse); R.C. 2151.03(A)(2) (neglect); R.C. 2151.04(C) (dependent). Accordingly, the juvenile court did not err in overruling appellants' objections and adopting the magistrate's findings.

{¶54} Second, the majority contends the juvenile court acted within its discretion in refusing to hear the additional evidence at issue. However, based on the facts presented, I believe the better practice, and in the interests of justice, would have been for the juvenile court to hear the additional evidence. Juv.R. 40(D)(4)(d) permits the court to hear additional evidence in ruling on objections to a magistrate's decision. The purpose is to provide a full, fair, and complete review by the court. Nevertheless, the juvenile court's decision to not hear the additional evidence, i.e. a video, does not change the outcome in this case as there is an abundance of evidence that the subject children are abused, neglected, and/or dependent.

{¶55} I concur in judgment only.

18